DIXIE RUBBER CO. *v.* MCBEE.*

(*Jackson.* April Term, 1923.)

1. **LICENSES.** Discretionary power of secretary of State under Blue Sky Law cannot be considered in collateral proceedings.

A discretionary power vested in the secretary of State to issue a permit, under the Blue Sky Law, cannot be considered in a collateral proceeding upon a note given for stock by a corporation holding such permit. (*Post, p.* 172, 173.)

2. **LICENSES.** Secretary of State not authorized to excuse filing of documents required by Blue Sky Law.

The secretary of State has no power or discretion to excuse the filing, by a corporation seeking to do business in the State, of the documents referred to in Blue Sky Law. (*Post, pp.* 172, 173.)

3. **LICENSE.** No recovery on note for stock by corporation failing to comply with Blue Sky Law, notwithstanding issuance of permit.

In an action on a note given for stock by a corporation, wherein the defense was interposed that the corporation was not authorized to do business in the State under the Blue Sky Law, notwithstanding that a permit had been issued, and it appeared that certain documents required by Acts (1st Ex. Sess.) 1913, chapter 31, had not been filed with the secretary of State. recovery on the note could not be had, the statute not having been complied with. (*Post, pp.* 172, 173.)

Case cited and approved: Goodyear v. Meux, 143 Tenn., 287.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. F. H. HEISKELL, Chancellor.·

---

*Authorities discussing the interpretation and effect of Blue Sky laws are collated in 15 A. L. R., 264, and 24 A. L. R., 523.

RIDDICK & RIDDICK, for appellant.

STICKLEY & FITZHUGH, for appellee.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

The Dixie Rubber Company, an investment corporation organized under the laws of the state of Mississippi, brought this suit against John H. McBee to collect a note of $1,000 which he had executed in part payment for a subscription by him to the capital stock of said company.

The defendant resisted the payment of the note upon several grounds, one of which is that the execution of the note was procured by fraud and misrepresentation of the agent of the company who sold him the stock, in that it was represented that the company had $100,000 as the proceeds of the sale of its stock. Still another defense is that the note was without consideration, in that McBee would be permitted to pay the same by the sale of machinery. A third defense is that the plaintiff being a foreign corporation had not filed its charter in the office of the secretary of State, nor complied with the requirements of the Blue Sky Law.

On the trial below it was stipulated that a transcript of the record in th esecretary of State's office, marked Exhibit A, and certified to by the secretary of State as a true copy of the Blue Sky application file of the Dixie Rubber Company as recorded in the office of the secretary of state, together with a letter attached to said transcript, dated April 1, 1922, from the secretary of State, "stating that a permit to sell its securities in Tennessee was issued to the Dixie Rubber Company on March 29, 1920, and that

this permit was revoked on January 27, 1922," might be read in evidence for all intents and purposes, just as if the deposition of the secretary of State had been taken and he had identified and certified to said transcript and filed the same as an exhibit to his deposition.

From an examination of this transcript of the documents and papers on file with the secretary of State, it is found that it does not contain a statement in full detail of the plan upon which the company proposed to transact business; it does not contain an itemized account of its actual financial condition and the amount of its property and liability. There is a financial statement showing generally the assets of the company to consist of bills receivable, real estate, cash, commissions paid to fiscal agents, and unsold stock, but this is far short of an itemized account of its actual financial condition and the amount of its property and liabilities. This transcript does not show that there was filed with the secretary of State a copy of the laws of the State under which it was incorporated, nor of its constitution and by-laws.

The defendant insists that under chapter 31, Acts of the First Extra Session of 1913, failure of the complainant to furnish to the secretary of State the papers referred to renders the sale of this stock to him void, and prevents the complainant from enforcing the collection of said note. Upon the other hand, it is contended by the complainant that the permit issued by the secretary of State, authorizing it to sell its stock, is conclusive that complainant had in all respects complied with the conditions and requirements of the statute to entitle it to offer its stock for sale.

The act in question specifically provides that before of-

fering or attempting to sell any stock to any person in this State every such investment company shall file in the office of the secretary of State certain documents itemized, among them being those which we have mentioned as being absent from the secretary of State's office, under the stipulation of counsel.  It is further provided that any person or persons who shall sell or attempt to sell stocks or other securities of an investment company who have not complied with the provisions of the law shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than $100 nor more than $5,000, or by imprisonment of not more than ninety days, or both, at the discretion of the court.

Under these provisions of the statute, the sale of this stock to the defendant was a violation of the law, expressly prohibited by the act, and no action could be predicated by the investment company on the note executed for stock thus sold, and the complainant would be repelled from this action, unless it can be said that the permit issued by the secretary of State concludes an examination into that fact.  The contention of the complainant for the affirmative of that proposition is based upon section 5 of the act.  That section makes it the duty of the secretary of State to examine the statements and documents filed; it authorizes him, if he deems advisable, to make or have made a detailed examination of the company's affairs, and if he finds the company is solvent, its articles of incorporation, its constitution and by-laws, and its proposed plan of business and proposed conduct, provide for a fair and equitable plan for the transaction of business, and in his judgment promises a fair return on the stocks or securities offered for sale, he shall issue to the company a statement

reciting that such investment company has complied with the provisions of this act; that detailed information in regard to the company and its securities is on file for public inspection, and that such investment company is permitted to do business in this State. While the stipulation of counsel does not embrace a copy of any statement or permit issued by the secretary of State, but merely shows that a permit to sell its securities was issued by the secretary of State, we may assume for the purposes of a decision of this case, that the permit contained a statement such as is required by the statute.

It will be observed that to entitle the secretary of State to issue a permit there must not only be on file in his office the statements and documents referred to, but he is required, if deemed advisable, to make a detailed and full examination, and determine therefrom that the proposed plan of business provides for a fair, just, and equitable plan, and that in his judgment it promises a fair return on the stock. To the extent that this discretionary power is vested in the secretary of State his action could not in a collateral proceeding of this sort be brought into question. The duty of filing these documents and papers is imposed by the act upon the investment company, and the secretary of State has no power or discretion to excuse the filing of such documents. The act specifically prohibits the offer or attempt to sell stock by the company until these documents have been filed. Of course, it cannot transact business in the State without the permit of the secretary of State, but it cannot offer or attempt to sell any stocks without first having filed these particular documents, and a violation of this requirement is made a misdemeanor punishable by large fines and imprison-

ment.    Their filing is a condition precedent to its offer to make any contract, or the making of any contract with subscribers for its stock.    It might be conceded, and we do not pass on that question, that the statement or permit issued by the secretary of State would afford *prima-facie* evidence of these documents having been filed, but in this case we have before us every paper and document contained in the files of the secretary of State, and, since we can ascertain and know therefrom that certain required documents were not filed, we are obliged to conclude that the law was not complied with when the contract and sale of the stock in question was had.    *Goodyear* v. *Meux*, 143 Tenn., 287, 228 S. W., 57.

In this view of the case, complainant cannot recover on the note, and, without determining the defense of fraud and lack of consideration, complainant's bill must be dismissed, with cost, and the chancellor's decree accordingly reversed.