## W. O. JOHNSON *v.* T. W. BAKER *et al.*

### (*Nashville.* December Term, 1923.)

1. **STATUTES.** Word ''not'' to be interpolated in certain section of statute relating to licensing of business of real estate agent.

   In Acts 1919, chapter 182, relative to the licensing of persons, firms or corporations engaged in the business of a real estate agent, the word "not" should be interpolated in the phrase in the second paragraph of section 2 so that the phrase will read "shall certify under oath that the signers thereof are acquainted with the applicant and the said applicant, if" not "a corporation, to be honest," etc., as without "not" the language is meaningless.  (*Post, pp.* 617, 618.)

   Acts cited and construed:  Acts 1919, ch. 182.

   Cases cited and approved:  Davis v. Hailey, 143 Tenn., 247;  Ashby v. State, 124 Tenn., 684;  Wright v. Cunningham, 115 Tenn., 445.

2. **BROKERS.** Certificate of good character of real estate broker held insufficient compliance with statute so that license issued was void; ''shall.''

   Under Acts 1919, chapter 182, section 2, requiring applicants for a license to engage in the business of real estate agent to furnish a certificate of good character signed by ten freeholders, who "shall" certify under oath that the applicant is a person of good moral character, plaintiff's certificate signed by only eight freeholders, of which only two made oath to the certificate of good character, *held* insufficient so that the license issued to plaintiff was void and he could not recover commissions on a sale in view of section 5;  the word "shall" having been used in its imperative sense and the object of the statute being the protection of the public.  (*Post, pp.* 618-621.)

Acts cited and construed:   Acts 1913, ch. 31.

Cases cited and approved: Sykes v. Dunlap, Stewart Equity, Oct. 29, 1921; Dixie Rubber Co. v. McBee, 253 S. W., 353; Sherrod v. Hughes, 110 Tenn., 311.

### FROM CARROLL.

Appeal from the Chancery Court of Carroll County.—
Hon. J. W. Ross, Chancellor.

J. W. Murphy, for complainant.

Harry E. Jones, for defendants.

Mr. Malone, Special Judge, delivered the opinion of the Court.

This was a bill filed to collect a real estate agent's commission.

The chancellor and the court of civil appeals concurred in holding the defendant liable for the commission, and we think their decree must be affirmed, unless the defendant can sustain his contention that the complainant was not a duly authorized agent, under the terms of chapter 182 of the Acts of 1919.

The material sections of this act, in so far as the present controversy is concerned, are as follows:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that no person, firm or corporation

Johnson v. Baker.

shall engage in the business of a real estate agent or sales-
man without first obtaining a license from the clerk of
the county court of the county within which such person,
firm or corporation shall reside or have its principal office
or place of business, and giving a bond to the State of
Tennessee executed by two good and sufficient sureties to
be approved by the clerk of the county court of said county,
or by a surety company duly authorized to do business in
this State, in the sum of one thousand dollars, said bond
to be in a form to be approved by the attorney general, and
for the use and benefit of all persons who may be injured
or aggrieved by the wrongful act or default of such real
estate agent or salesman, and any person so injured or
aggrieved may bring suit on such bond in his or her name
without assignment thereof.

"Sec. 2. Be it further enacted, that any person, firm or
corporation desiring to carry on the business of a real
estate agent or a real estate salesman in this State shall
make application for a license therefor to the clerk of
the county coourt of the county in which such person,
firm or corporation shall reside or have its principal
office for the conduct of business upon a form to be pre-
scribed and furnished by the attorney general, certifying
under oath his full name, if an individual, the full names
of all persons, if a partnership, and the date of incorpo-
ration, the names of the officers, directors and stockholders,
the State wherein incorporated, and the amount of stock
actually paid in, if a corporation, and state the name of
the city or town wherein it is intended to carry on such
business, giving the street and number of building, if prac-
ticable.

"The applicant shall also deliver to the said clerk of the said county a recommendation on a form approved by the attorney general, signed by at least ten freeholders of the county in which the applicant intends to carry on business as a real estate agent or real estate salesman, which recommendation shall certify under oath that the signers thereof are acquainted with the applicant, and believe said applicant, if a corporation, to be honest, truthful, and of good moral character. . . .

"Upon the receipt of which application, recommendation, payment and bond, it shall be the duty of the clerk of the county court to whom the application is made, to issue to such applicant a license to carry on the business of a real estate agent until the 31st day of December next following, provided, that no license shall be issued to any applicant who shall have had his license as real estate agent or salesman revoked, as hereinafter provided under section 6 within twelve months preceding the date of the filing of said application. Applications for license may be made during the months of November and December of each year, to take effect from and after January 1st next following. All bonds given or filed under the provisions of this act shall be filed and preserved by the several clerks of the said county courts for the use and benefit of all persons who may be interested therein, and upon application therefor, certified copies of same shall be furnished to any person or persons requiring same upon payment of legal fees therefor. . . .

"Sec. 4. Be it further enacted, that any person, persons, or corporation, who shall engage in the business of a real estate agent, or real estate salesman, as herein defined,

Johnson v. Baker.

without having first complied with the provisions of this act, shall, for each and every instance of such practice, be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than twenty-five dollars, nor more than five hundred dollars.

"Sec. 5. Be it further enacted, that no person, persons, firm or corporation doing or carrying on, or engaged in the business of a real estate agent or real estate salesman, shall bring or maintain any action in the courts of this State for the collection of compensation for the negotiation of a purchase, sale, mortgage, lease or rental of real estate, or any interests therein, without alleging and proving that he, they or it was a duly licensed real estate agent, or real estate salesman at the time the alleged cause of action arose."

This act was held constitutional in the case of *Davis* v. *Hailey*, (1920), 143 Tenn., 247, 227 S. W., 1021.

The application made by the complainants appears in the file, and shows on its face that it was signed by only eight citizens, and only two of these eight made oath to the certificate of good character, as required by section 2, hereinabove quoted. It therefore stands admitted that the complainant had not filed a certificate signed by ten freeholders of the county who "certify under oath that the signers thereof are acquainted with the applicant, and believe said applicant" if not "a corporation, to be honest, truthful and of good moral character." We have interpolated the word "not" in this section of the act, as it was obviously omitted. Without it the language would be meaningless. *Ashby* v. *State* (1911), 124 Tenn., 684,

139 S'. W., 872; *Wright* v. *Cunningham* (1905), 115 Tenn.,
445, 91 S. W., 293.

Was the clerk authorized to issue a license in the absence of such a certificate under the oath of ten freeholders?

It is insisted on behalf of the complainant that the purpose of this provision is to satisfy the clerk of the good character of the applicant, and that this portion of the act is merely directory, and not mandatory, in its nature.

The court of civil appeals, in the opinion of Mr. Justice FAW, states that it held such a provision mandatory, and that the license of an agent who failed to comply therewith was void, in the case of *Sykes* v. *Dunlap,* Stewart, Equity, October 29, 1921, but that its decree was reversed by this court, without opinion, on January 28, 1922. For this reason, that court felt constrained to affirm the decree of the chancellor on this point.

At the time that *certiorari* was granted, without opinion, in the case of *Sykes* v. *Dunlap,* this court had not decided the case of *Dixie Rubber Co.* v. *McBee* (July 26, 1923), 253 S. W., 353.

In that case the court held that the secretary of State had no power or discretion to issue a permit or license under the Blue Sky Law of this State (Acts 1913, First Extra Session, chapter 31), when the proper documents had not been filed in his office, saying at page 354;

"Their filing is a condition precedent to its offer to make any contract, or the making of any contract with subscribers for its stock."

Answering a vigorous petition to rehear, the court in an opinion for publication, filed in this case on March 8,

1924, said that it was argued at the hearing, and reargued in the petition:

"That the fact that the secretary of State has issued a permit to the complainant to do business in Tennessee was conclusive that the complainant had in all respects complied with the law."

Relying to this contention, it was said:

"The petitioner does not contend that the assumption of power by an officer is conclusive, but the argument is that the secretary of State is granted certain discretionary and *quasi*-judicial powers under the Blue Sky Law and that his act in the exercise of that power is final, and his finding has all the effect and sanction of a solemn judgment and the courts will not disturb it. Numerous authorities are referred to and cited, the effect of which are that, where the performance of an official duty or act involves the exercise of judgment or discretion, the exercise of such discretionary power is not subject to review or control. No one doubts the correctness of that doctrine, nor was it ignored in the decision of this case. The petition overlooks the fact that the secretary of State, under the act, was without any power to issue any permit or certificate or to exercise any act of discretion with respect thereto until after the corporation had filed the documents required by the act to be filed. The act does make it the duty of the secretary of State to examine the statements and documents filed and, if he deems advisable, may make a detailed examination of the company's affairs, and, if he find the company solvent and that its articles of incorporation, by-laws, plan of business, and proposed contracts provide for a fair, just and equitable

plan for transacting business and in his judgment promises a fair return on the securities to be offered for sale, he must issue a statement reciting that the investment company has complied with the provisions of this chapter and is permitted to do business in the State. In so far as the exercise of these discretionary duties imposed upon the secretary of State is concerned, his action in issuing the permit is conclusive in a proceeding of this sort, but, before he is authorized to exercise any discretion whatever, the documents must be on file for his examination and, if he undertakes to issue a certificate without these documents being on file, he is simply exceeding his authority and his permit or statement affords no hiding place for the corporation to make lawful a contract which the statute declares unlawful."

We are unable to differentiate this case from the case of *Dixie Rubber Co.* v. *McBee,* supra.

In each case the purpose of the act was to protect the public. In each case the official issuing the permit was required to base his action on certain documents and information filed in his office.

The certificate of good character involved in the Real Estate Agent's Act is a more vital document than the "copy of the laws" required under the Blue Sky Act.

The statute, as will be observed, says that this sworn certificate "shall" be filed. We recognize that the word "shall" is often used convertibly with "may." *Sherrod* v. *Hughes* (1903), 110 Tenn., 311, 315, 75 S. W., 717. But its primary meaning is imperative, and we think it was so used in this portion of the act.

Johnson v. Baker.

It is strongly urged that the record shows a substantial compliance with the terms of the act. We do not think so. The statute says ten freeholders, not eight, and requires ten oaths, not merely two.

It results that the decrees of the chancellor and of the court of civil appeals must be reversed, and the bill dismissed.