16107. WITT *v*. TRUSTEES LOAN & SAVINGS COMPANY.

Where an action was brought by a corporation on a subscription for its stock, designated as securities in Class "D" under the "securities act" (Ga. L. 1920, p. 250), it was a valid defense that the corporation, at the time of taking the subscription, had not complied with the provisions of section 13 of the act, as to the filing of certain statements with the securities commission, notwithstanding a license had been applied for and obtained from the commission.

DECIDED APRIL 18, 1925.

Certiorari; from Fulton superior court—Judge Bell. November 8, 1924.

Application for certiorari was denied by the Supreme Court.

*Noah J. Stone,* for plaintiff in error.

*Fuller & Bell,* contra.

*George M. Napier, attorney-general, T. B. Conner,* for Georgia Securities Commission.

BELL, J. Trustees Loan & Savings Company brought suit in the municipal court of Atlanta against Charles E. Witt upon a subscription for stock in Class "D," under the "securities act" (Ga. L. 1920, p. 250). The subscription was made on February 20, 1923. The case resulted in a directed verdict in favor of the plaintiff, a certiorari was dismissed by the superior court, and the defendant excepted.

The plaintiff, at the time of taking the subscription, had applied for and obtained from the securities commission a license to sell its stock, under the securities act. The defendant, however, pleaded among other things that the plaintiff had not complied with section 13 of the act, and contended then and still contends that a failure by the plaintiff to comply with this section before taking his subscription rendered the subscription void, notwithstanding the license or permit. In support of this defense he offered in evidence a certified copy of the application as filed with the com-mission, disclosing that the facts were as the plea alleged. He offered also oral testimony to the same effect. All of this evidence was rejected as being irrelevant and immaterial, and this ruling is assigned as error.

In the opinion which we entertain with respect to the question thus presented, and in view of the record, we do not deem it necessary to decide or state other points which the plaintiff in error has insisted upon, it appearing to be an undisputed fact that the plain-

tiff did not comply with the securities act in the particulars alleged. The act in question was amended in 1922 (Ga. L. 1922, p. 156), but none of the provisions of the amendment are here pertinent.

Section 13 of the original act provides that *no securities in Class "D" shall be sold or offered for sale* until there shall have been filed in the office of the commission certain specified statements and documents, including a statement (subsection 4) of the names, addresses, and prior occupations, during not less than eight years next preceding, of the officers, directors, or trustees of the applicant if a corporation (as was the plaintiff), giving details as to time, place, and addresses of their employers, and reasons for discontinuance of employment. The effect of the court's ruling was to hold that the noncompliance with these requirements would not constitute a defense to the suit upon the subscription. In our opinion this ruling was error. Section 35 provides that every sale and contract of sale made in violation of *any of the provisions* of the act shall be void at the instance of the purchaser at any time within twelve months from the date of the purchase or contract of purchase. The defense was interposed within the time limit prescribed. It matters not that the plaintiff may have obtained a license to sell the securities, or that the sale of the same without a license is made criminal. According to the clear and unequivocal language of the act, as expressed in the two sections just mentioned, a sale of securities in Class "D" may be voided by the purchaser within twelve months if there was a failure to comply with the requirements of section 13, without reference to whether a license to make the sale has been granted or not.

The identical question seems to have been decided by the Supreme Court of Tennessee in Dixie Rubber Co. *v.* McBee, 148 Tenn. 168, 170 (253 S. W. 353). The contention of the plaintiff there, as here, was that the permit or license issued (in that State) by the secretary of State, authorizing it to sell its stock, was conclusive that the plaintiff had in all respects complied with the requirements of the statute to entitle it to offer its stock for sale. The defendant, on the other hand, insisted that the failure to comply therewith rendered the sale void, irrespective of the previous granting of the license. The court said: "The act in question [Public Acts of Tenn., First & Second Extra Sessions 1913, p.

500] specifically provides that before offering or attempting to sell any stock to any person in this State, every such investment company shall file in the office of the secretary of State certain documents itemized, among them being those which we have mentioned as being absent from the secretary of State's office, under the stipulation of counsel. It is further provided that any person or persons who shall sell or attempt to sell stocks or other securities of an investment company who have not complied with the provisions of the law shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than $100 nor more than $5,000, or by imprisonment of not more than ninety days, or both, at the discretion of the court. Under these provisions of the statute, the sale of this stock to the defendant was a violation of the law, expressly prohibited by the act, and no action could be predicated by the investment company on the note executed for stock thus sold, and the complainant would be repelled from this action, unless it can be said that the permit issued by the secretary of State concludes an examination into that fact. The contention of the complainant for the affirmative of that proposition is based upon section 5 of the act. That section makes it the duty of the secretary of State to examine the statements and documents filed; it authorizes him, if he deems advisable, to make or have made a detailed examination of the company's affairs, and if he finds the company is solvent, its articles of incorporation, its constitution and by-laws, and its proposed plan of business and proposed conduct provide for a fair and equitable plan for the transaction of business, and in his judgment promises a fair return on the stocks or securities offered for sale, he shall issue to the company a statement reciting that such investment company has complied with the provisions of this act; that detailed information in regard to the company and its securities is on file for public inspection, and that such investment company is permitted to do business in this State. While the stipulation of counsel does not embrace a copy of any statement or permit issued by the secretary of State, but merely shows that a permit to sell its securities was issued by the secretary of State, we may assume for the purposes of a decision of this case, that the permit contained a statement such as is required by the statute.

"It will be observed that to entitle the secretary of State to

issue a permit, there must not only be on file in his office the statements and documents referred to, but he is required, if deemed advisable, to make a detailed and full examination, and determine therefrom that the proposed plan of business provides for a fair, just, and equitable plan, and that in his judgment it promises a fair return on the stock. To the extent that this discretionary power is vested in the secretary of State his action could not in a collateral proceeding of this sort be brought into question. The duty of filing these documents and papers is imposed by the act upon the investment company, and the secretary of State has no power or discretion to excuse the filing of such documents. The act specifically prohibits the offer or attempt to sell stock by the company until these documents have been filed. Of course, it can not transact business in the State without the permit of the secretary of State, but it can not offer or attempt to sell any stocks without first having filed these particular documents, and a violation of this requirement is made a misdemeanor punishable by large fines and imprisonment. Their filing is a condition precedent to its offer to make any contract, or the making of any contract with subscribers for its stock. It might be conceded, and we do not pass on that question, that the statement or permit issued by the secretary of State would afford *prima facie* evidence of these documents having been filed, but in this case we have before us every paper and document contained in the files of the secretary of State, and, since we can ascertain and know therefrom that certain required documents were not filed, we are obliged to conclude that the law was not complied with when the contract and sale of the stock in question was had." See also, in this connection, Goodyear v. Meux, 143 Tenn. 287 (228 S. W. 57) ; Biddle v. Smith, 148 Tenn. 489 (3) (256 S. W. 453) ; Johnson v. Baker, 149 Tenn. 613 (2), 618 (259 S. W. 909).

The Georgia securities law is very much more elaborate than the Tennessee act, and it is true also that the statutes are materially different in certain particulars. But there is little, if any, difference in the *effect* of the provisions of the two statutes relative to matter such as was relied on as a defense respectively in the case before us and in the Tennessee case from which we have quoted. While some things said in decision in the Dixie Rubber Company case would be amiss under the language of the Georgia statute, the

court's reasoning, we think, is, in the main, sound, and we are persuaded to follow it. No other authority so directly in point has been found.

It is our opinion that evidence of noncompliance with the provisions of section 13 of the securities law of this State would have established a valid defense, and that the rejection of such evidence was error. The superior court erred in dismissing the certiorari.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*