19880. BRANNAN, BECKHAM & COMPANY *v.* RAMSAUR.

DECIDED FEBRUARY 15, 1930.

*Dillon, Calhoun & Dillon,* for plaintiffs in error.

*Little, Powell, Smith & Goldstein, Frank A. Holden, C. S. Reid,* contra.

BELL, J. This case involves a construction of the Georgia securities law as contained in the act of August 17, 1920 (Ga. L. 1920, p. 250), and the amendment of August 21, 1922 (Ga. L. 1922, p. 156).

John H. Ramsaur brought suit in the city court of Atlanta against Brannan, Beckham & Company, a corporation, to recover the sum of $10,000 paid by him for certain shares of stock in Novelty Footwear Corporation, alleging that he purchased the stock through the defendant as a broker; and that, because the sale was subject to certain provisions of the Georgia securities law which were not complied with, the defendant is liable to him for the amount which he paid for such stock. The suit was filed within twelve months from the date of his purchase, and alleged a tender of the stock-certificates into court to be disposed of as the court might direct. The court sustained a general demurrer to the defendant's answer as amended, and, after denying a motion for a rehearing on the demurrer, entered judgment for the plaintiff for the amount sued for, as in cases of default; whereupon the defendant brought the case to this court, assigning error upon these rulings.

The petition alleged noncompliance with several provisions of the securities law, including section 11 of the original act, which refers to securities in class "C"; and, in the view which we take of the case, it is unnecessary to pass upon any question which might seem to be raised by the record with reference to the violation of other provisions.

Paragraph 2 of the petition was as follows: "Defendant is, and at the times hereinafter stated was, engaged, among other things, in acting as broker in selling stocks on commission." To which paragraph the defendant made the following reply: "Answering paragraph 2, this defendant says that it is engaged largely in handling real-estate loans, real estate and securities, including stocks and bonds."

Paragraph 3 of the petition alleged the purchase of the stock through the defendant as a broker at the price of $10,000, "which said purchase-price petitioner has paid in full." To this paragraph the defendant made answer as follows: "Answering paragraph 3, this defendant denies the allegations as pleaded, and says that the contract entered into by the plaintiff with regard to the subject-matter referred to is set forth in the contract dated February 6, 1928, a copy of which is hereto attached, marked Exhibit 'A,' and made a part of this answer, and defendant denies that plaintiff bought stock through it, but says the trade was made directly between the parties, as shown in the said contract."

Paragraph 4 of the petition repeated the statement that the stock was sold by the defendant, alleging that such stock was "sold by the defendant as agent or broker for the issuer, to wit, Novelty Footwear Corporation." The defendant responded "that the contract which plaintiff entered into describes the transaction. This defendant denies that it sold the stock, the contract having been made directly between the Novelty Footwear Corporation and plaintiff as set forth in Exhibit 'A'."

Paragraph 6 of the petition averred again that the "sale was effected by the defendant as broker," and added further that the defendant was paid a commission by the issuer for so doing. The defendant's only answer to this paragraph was an admission "that it was paid a commission for bringing the parties together."

Paragraph 7 of the petition alleged that the defendant was paid a commission of $1,500, and this was admitted in the answer.

Other paragraphs of the petition alleged facts to show that the stock was subject to classification either as "C" or "D" under the securities law, and that it had been sold without a compliance with section 11 and without having been "qualified for sale under the Georgia law, either as Class 'C' or Class 'D' stock, and the sale thereof was illegal and in violation of the said statute, without regard to whether said stock should be classed as 'C' or 'D'."

To these allegations the defendant made a general denial, but, as shown below, the answer set forth additional facts tending to qualify such denial, in view of which it must be construed.

Attached to the answer was a copy of the contract referred to as Exhibit "A", representing the purchase of the stock by the plaintiff from Novelty Footwear Corporation, it appearing therefrom that the plaintiff paid $3,000 in cash at the execution of the agreement and gave his note for a balance of $7,100, payable at a later date. Other provisions of the agreement will appear therefrom, the following being a copy:

"Atlanta, Ga., Feb. 6th, 1928.

"The undersigned hereby agrees to purchase a one-eighteenth interest in the Novelty Footwear Corporation, said one-eighteenth interest to be represented by one hundred and one shares of 8% cumulative preferred stock of the par value of $100 per share, and one hundred and forty-one shares of common stock of no par value, for the total sum of $10,100, to be paid as follows: cash

$3,000 and one note for $7,100, due May 3d, 1928, receipt of which is hereby acknowledged. This purchase is made with the understanding that the undersigned is to be elected director and secretary of said company and is to be employed at a salary of $100 per week, his duties to be defined by the president of said company.

(Signed) "John H. Ramsaur.

"Accepted 2-7-28. Novelty Footwear Corporation.

(Signed) "Henry James, President."

The answer, after replying seriatim to the allegations of the petition, continued as follows: "Answering said suit further, this defendant says:

" (a) That the transaction entered into between plaintiff and the Novelty Footwear Corporation does not come within the provisions of the Georgia securities law, for the reason that the consideration involved was not solely for the stock or solely for a one-eighteenth interest in the Novelty Footwear Corporation, but was entered into and the consideration paid largely and substantially because of a contract of employment on a salary basis of $100 per week, from which source plaintiff drew in the aggregate a large sum.

" (b) The contract was an employment contract in which plaintiff obtained a one-eighteenth interest in the business, and was not a sale of securities as contemplated by the act known as Georgia securities law.

" (c) That $7,100 referred to in Exhibit 'A' was not paid till on or after May 3, 1928, at which time the Novelty Footwear Corporation had complied with the Georgia securities law, its stock being listed and licensed as securities in Class 'C', and so the sale was consummated at a time when the corporation was licensed under the Georgia securities law.

" (d) That plaintiff and other officers of Novelty Footwear Corporation caused the stock to be so listed; that at the time of paying the $7,100 plaintiff was acquainted with the law, was apprised of all the conditions surrounding the transaction, and had knowledge of his rights, and yet he paid out his money. It was then his duty to have lessened his damages, by refusing to pay the note, and, due to his actions in this regard, is now estopped to assert the claim sued upon.

" (e) That the transaction complained of is an isolated transaction, and falls under section 9, clause (1) of the Georgia securi-

ties law, making this a Class 'B' security, and so not subject to the provisions of said law.

"(f) That plaintiff became a director and secretary of the Novelty Footwear Corporation at the time of entering into the contract, and for such reason the nature of the parties made it necessary for plaintiff to have investigated very carefully before entering into the contract, and he did so investigate, and such fact was of such a nature to have assured, and did then assure, the sale and disposition of the security without the perpetration of fraud as contemplated in section 7, clause (2) of the Georgia securities law."

■ From the above statement it is apparent that the following facts, among others, must be taken as true from the pleadings:

(1) The defendant was engaged as broker in selling stocks on commission, and was a dealer in securities, including stocks and bonds. This is so for the reason that the petition avers that the defendant was such broker, and the answer, without denying this fact, goes further and alleges that it was engaged in handling securities, including stocks and bonds.

(2) That the defendant acted as a broker in selling the stock to the plaintiff. The defendant in some portions of its answer attempted to deny this fact, but the petition, in paragraph 6, alleged directly that the sale was effected by the defendant as a broker, for which the defendant was paid a commission by the issuer, the Novelty Footwear Corporation, and to this averment the defendant made no reply except to admit that it was paid a commission for bringing the parties together. The answer being evasive, the allegation in the petition that the defendant received a commission from the issuer for effecting the sale as broker, must be taken as true, since the statement that the defendant received a commission for bringing the parties together was in no wise inconsistent therewith.

(3) That the stock was not listed with or qualified for sale by the securities commission at the time of the sale to the plaintiff, but that before the transaction was finally closed by the payment of the note for the balance of the purchase-money "the Novelty Footwear Corporation had complied with the Georgia securities law, its stock being listed and licensed as securities in Class 'C', and so the sale was consummated at a time when the corporation was licensed under the Georgia securities law." The allegation that

"the plaintiff and other officers" of the corporation "caused the stock to be so listed" further indicates that it was not listed at the time of the sale, since the plaintiff did not become an officer until afterwards. Thus, the allegation in the petition that no statements were filed as required by section 11 of the securities act appears to be true except as to such statements as were filed after the sale of the stock to the plaintiff and before the payment of the note referred to.

(4) That the plaintiff eventually and before suit paid the aggregate sum of $10,100 as the consideration for the stock, although he is suing for the lesser sum of $10,000.

We do not understand that counsel for the plaintiff in error will controvert the proposition that the above facts are necessarily to be deduced from the petition and the answer, when considered together. In any event, we think the construction which we have adopted is the only one which can reasonably be made, in view of the well-settled principles regarding the interpretation of pleadings. Section 5637 of the Civil Code of 1910 provides that where facts are charged to be within the knowledge of a party, or where from all the circumstances such knowledge is necessarily presumed, and he fails to answer altogether, or makes an evasive answer, the charge is to be taken as true. It is also the rule that, where the effect of the answer is both to admit and to deny an allegation in the plaintiff's petition, the admission and not the denial must prevail, where the sufficiency of the plea is brought into question in a timely and appropriate manner. *Williams Mfg. Co.* v. *Warner Sugar Refining Co.*, 125 *Ga.* 408 (54 S. E. 95); *Bedingfield* v. *Bates Advertising Co.*, 2 *Ga. App.* 107 (2) (58 S. E. 320); *Moore* v. *Smith Machine Co.*, 4 *Ga. App.* 151 (3) (60 S. E. 1035); *Ford* v. *Serenado Mfg. Co.*, 27 *Ga. App.* 535 (2) (109 S. E. 415); *Southern Crushed Stone Co.* v. *Dorn*, 37 *Ga. App.* 564 (141 S. E. 59).

The several grounds upon which the defendant seeks to maintain that the securities law was inapplicable must be examined in the light of the facts above enumerated; and it will be the purpose of this opinion to answer the question whether the law with reference to Class "C" stock was complied with, and, if not, whether the defendant pleaded a valid reason for noncompliance, either because the stock was entitled to an exempted classification or for other cause.

■ Securities in Class "A" are in no way subject to the provisions of the securities law. Those in Class "B" are not subject when disposed of by or to the persons and in the manner prescribed by the statute. Ga. L. 1920, p. 250, section 8; Ga. L. 1922, p. 156, section 4. Securities in Classes "C" and "D" are subject to the operation of the securities acts, as shown by their various provisions respectively.

Section 11 is as follows: "Securities in Class 'C' may be disposed of, sold, or offered for sale, upon compliance with the following conditions, and not otherwise: A statement shall be filed in the office of the securities commission: (1) describing the evidences of indebtedness, preferred stock or common stock intended to be offered or sold; (2) stating the law under which and the time when issuer was organized; (3) giving a detailed statement of the assets and liabilities of such issuer, and income or profit and loss statement, and giving an analysis of surplus account; (4) giving the names and addresses of its principal officers and of its directors or trustees; (5) giving pertinent and necessary facts and data and information establishing that the securities to be offered are securities in Class 'C'. Such statement shall be accompanied by a filing fee of $5.00, and shall be verified by the oath of not less than two credible persons having knowledge of the facts."

Section 13 provides that no securities in Class "D" shall be sold or offered for sale until there shall have been filed in the office of the commission certain statements and documents therein specified.

We will make no decision in this case as to whether the securities in question should have been placed in Class "D" as a matter of fact. The answer shows that they were not entitled to be classed higher than "C", and the case appears to have been disposed of in the court below, and has been argued in this court, upon the theory that "C" was the proper classification, unless, as contended by the plaintiff in error, the sale was an isolated one so as to place the stock in Class "B", or unless, for one or more of the other reasons stated in the answer, the transaction under investigation was unaffected by the securities law.

We think it clear from the pleadings that there was no compliance with the law as to securities in Class "C". As we have pointed out in the preceding division, the answer must be taken as admitting that no statements were filed with reference to this stock

in accordance with the provisions of section 11. It is true the statute contains nothing to indicate specifically who shall file the statements required by that section; but, with a single possible exception, it does prohibit the sale or disposition of any securities in Class "C" until the statements are made and filed by some one; and it is provided in section 35 that every sale or contract of sale made in violation of any of the provisions of the act shall be void at the instance of the purchaser at any time within twelve months from the date of the purchase or contract of purchase, and the seller, as well as every salesman, agent, or broker of or for such seller, who knowingly participated in such sale shall be liable to the purchaser for the amount paid, upon a tender of the securities to the seller or into court.

We have just referred to a possible exception to the operation of section 11 as to the making and filing of statements with regard to securities in Class "C". If such exception exists it arises only by reason of section 14 $b$, which was added to the securities law by section 7 of the act of 1922. It is provided in effect in that section (14 $b$) that every dealer not an issuer engaged in buying and selling securities as defined in section 5 may upon certain conditions be registered as a licensed dealer or broker in such securities, and be relieved of "additional fees or statements evidencing the nature and character of the securities offered for sale by him," except that in case of the sale of securities in Class "C" he shall give notice of his intention to deal in such securities, "followed within such time as may be prescribed by the commission, by a brief statement under oath showing that the security to be offered is in said class, . . and such dealer or broker will not be required for himself or the issuer to file separate applications for each issue of securities in Class 'C' sold or dealt in by him"; provided that such exemptions shall not apply to securities in Class "C" where the commission has good cause to believe that fuller investigation is necessary, nor to any securities whatever in Class "D".

Assuming that section 14 $b$ was intended by the legislature as a modification of section 11, it does not amount to a repeal of that section, but merely creates an exception thereto; and if by reason of a compliance by the defendant with the provisions of section 14 $b$ it became unnecessary as to the particular stock to file the statements usually required by section 11, it was incumbent upon the

defendant to plead this fact as a reason for the failure to file such statements. The answer, however, contained nothing to show whether or not the defendant had complied with the conditions of section 14 *b*, and the provisions of section 7 of the act of 1922, adding section 35 *b*, are applicable. We refer to the following statement in that act: "In any suit, complaint, information, indictment, or other writ or proceeding, civil or criminal, laid or brought under this act, it shall not be necessary to negative any of the exemptions provided by this act; and the burden of proof of any such exemption claimed by the defendant shall be upon the defendant."

It thus appears that the answer affirmatively showed a non-compliance with the law in respect to securities in Class "C", and therefore failed to set forth any valid defense, unless for one or more of the reasons specially pleaded the stock was not subject to the operation of the securities law. See *Felton* v. *Highlands Hotel Co.*, 165 *Ga.* 598 (141 S. E. 793, 57 A. L. R. 987).

We will now examine in order the several contentions of the defendant with regard to the latter question.

■ One of the contentions is that the sale complained of was an isolated transaction, and, therefore, that the stock should be considered as a security in Class "B" under section 9 (1) of the amended securities act, which places in that class any securities "sold by the owner or his representative for the owner's account, such sale being in the nature of an isolated transaction and not made in the course of repeated and successive transactions of a similar nature by such owner, or by such representative, and such owner or representative not being the underwriter of such securities."

From an examination of both the acts embracing what is known as the securities law, and to recall at the same time the evils that the legislature sought to correct thereby, it is apparent that it was the intention of the legislature to throw the most rigorous restrictions around the business operations of stock promoters and others engaged in the selling of securities as a business, the purpose being to eliminate as far as possible that class of dealers who were accustomed, by artful and unscrupulous methods, to induce the unsophisticated into making hazardous or worthless investments, and in this way to prey upon the public as practical cheats and swindlers.

The answer shows that the stock involved in the instant case would ordinarily fall within a class that is considered by law as a somewhat questionable security, to wit, Class "C", and that the sale to the plaintiff was consummated through the medium of a stock broker. Paragraph 4 of section 9 provides that all stocks sold to "any dealer or broker in securities" shall be included in Class "B", that is, shall not be subject to the securities law. This clause would imply that such purchasers were deemed by the legislature to be so experienced as to need no protection by means of the securities law, and thus would tend in some measure to indicate that dealers and brokers should not ordinarily be classed among those who are permitted to participate in single transactions under the terms of paragraph 1 of the same section.

In view of the salutary purposes of the law, can it be said that the provisions as to isolated transactions were intended to allow a single sale by a stock salesman or broker, though repeated sales would be prohibited? If it is wholesome to the public to apply a general restraint, it is likewise a safeguard to the individual investor to prohibit a single sale of a doubtful security by a professional broker or salesman. To permit isolated sales by those engaged generally in the business of dealing in stocks would amount virtually to a nullification of the law, since the broker or salesman could so scatter his dealings over different sections of the State that if a rescission or defense were offered by a particular investor, he would be in a position to claim that the transaction was an isolated one, the information to the contrary being hardly available to such complaining investor. The construction contended for by the plaintiff in error would seem not only to open the way for a wholesale evasion of the law, but also for a renewal of those fraudulent practices which the law was intended to prohibit; and the more clearly does this appear since the exemption provided by section 9 (1) applies as well to securities which otherwise would be ranked in Class "D" as to those intrinsically entitled to be placed in Class "C".

Moreover, we think the provisions of section 7 (2) will shed light upon the question under consideration. It is provided in that section that "Securities, the inherent qualities of which, or in the nature of one or both parties to the sale thereof, assure the sale and disposition without the perpetration of fraud, . . shall be known as securities in Class 'B'." Hence, securities were

to be placed in Class "B" only because of their inherent quality or the nature of one or both of the parties to the sale. Section 9 is a mere amplification of such general standard; and since paragraph 1 of that section, which alone deals with isolated transactions, makes no requirement as to the inherent quality of the securities sold, it would seem to follow that the determining factor in the classification there made is the "nature of one or both parties to the sale thereof." Therefore, in passing upon the question of whether a sale is an isolated transaction, so that the securities sold should be considered as falling within Class "B", it becomes a matter of importance whether the owner or representative was engaged generally in the business of a broker or dealer.

It is our opinion that section 9 (1) was intended to cover only those sales by an owner of securities, or by another acting in the capacity of agent or attorney in fact for him, which would be in the nature of an isolated transaction both as to the owner and as to such representative. If it is one made in the course of repeated and successive transactions of a similar nature, either by the owner or by the representative, then it is not an isolated transaction within the meaning of the law. The answer shows that the defendant was engaged generally in the business of selling stocks and bonds, and, so, the sale to the plaintiff was necessarily made in the course of repeated and successive transactions of a similar nature by the defendant. In these circumstances the sale could not be exempted under section 9 (1), irrespective of whether it was an isolated transaction as to the owner. In this view, it is unnecessary to determine whether an owner who was also the issuer could claim the exemption provided by section 9 (1).

What we hold is that whether an owner be the issuer or not, a sale made in his behalf by a regular broker or dealer is not an isolated transaction, since it was necessarily made in the course of repeated and successive transactions of a similar nature by such representative of the owner.

■ There is no merit in the contention that the securities law was inapplicable because the contract was one of employment in which the plaintiff obtained a one-eighteenth interest in the business of the Novelty Footwear Corporation and a position as director and secretary of the company at a specified weekly salary. In section 1 of the act of 1922, amending section 5 of the act of 1920,

it is provided that "the word 'securities' shall further include all contracts for the sale of territorial rights for which a consideration is paid or to be paid, and all contracts which entitle the purchaser thereof to receive from the vendor compensation, whether the same be for services to be performed, for discounts or special rates not afforded the general public or goods to be purchased; or any other compensation whatever accruing to the purchaser solely by virtue of the purchase of such contract." Under this provision it is immaterial that the plaintiff may have obtained a contract of employment in connection with the sale of the stock.

The fact that the corporation which issued the stock may have complied with the securities law after the making of the contract of sale and before the payment of the balance of the purchase-money is no reason for relieving the defendant broker from liability to the plaintiff for the amount of the purchase-money. Section 35 provides that every sale and contract of sale made in violation of the provisions of the act shall be void at the instance of the purchaser at any time within twelve months from the date of such purchase or contract of purchase; and, so, the invalidity of the sale to the plaintiff must be determined by the facts as they existed at the execution of the contract of sale, and not by the conditions as they may have existed at the maturity of his note for a portion of the purchase price. *Witt* v. *Trustees Loan & Savings Co.,* 33 *Ga. App.* 802 (127 S. E. 810).

Nor would the fact that at the time of paying such note the plaintiff knew that the law had not been complied with operate to prevent his recovery of the entire amount paid. The law does not make the buyer's want of knowledge that the statute has been violated a condition precedent to his right to recover, and his mere knowledge or lack of knowledge upon that subject is immaterial. The answer alleges no facts sufficient to constitute an estoppel against the plaintiff.

Finally, it is alleged in effect that, since the plaintiff was to become a director and the secretary of the Novelty Footwear Corporation, it was necessary for him to have made a careful investigation before entering into the contract, which investigation he did in fact make, and that because of these circumstances the nature of one or both of the parties was such as to assure a sale and disposition without the perpetration of a fraud. Upon the basis of these allegations

it is claimed the stock should be considered as in Class "B" under section 7 (2), supra.

As we have said above, the provisions referred to amount only to a general statement of what will constitute securities in Class "B", and the specific and exclusive standards are to be determined by reference to the more elaborate provisions of section 9, as amended by the act of 1922. There is nothing in the latter section which could be taken as authorizing a classification in "B" merely by reason of the fact that the plaintiff was to become a director and the secretary of the issuer of the stock.

■ If we are correct in what we have said above, it will follow that the answer failed to set forth any valid defense and was properly stricken on general demurrer.

"Under the act creating the city court of Atlanta, and the acts amendatory thereof, the judge has the power to try any case in which trial by jury is not demanded. Hence, where a petition is brought under the code procedure and is duly paragraphed, and the defendant has not answered, or his answer has been stricken, the judge may either direct a verdict in favor of the plaintiff, or himself enter up the judgment without the intervention of a jury." *Ford v. Wright,* 9 *Ga. App.* 177 (2) (70 S. E. 965) ; *Pape* v. *Woolford Realty Co.,* 35 *Ga. App.* 284 (7) (134 S. E. 174).

We are unable to hold that the judgment should be set aside upon any of the exceptions taken.

Nothing said in the above opinion is intended as any sort of reflection upon the character or reputation of the plaintiff in error. Our remarks touching the purpose and intent of the securities law were meant only as a statement of our construction of the statute, with the reasons therefor, and were altogether impersonal.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*