GLASCOCK et al. v. MANSFIELD.—158 S. W. (2d) 358.

Eastern Section. November 5, 1941.

Petition for Certiorari denied by Supreme Court, January 17, 1942.

Cantrell, Meacham & Moon, of Chattanooga, for appellants.
Spurlock, Spears & Noone, of Chattanooga, for appellee.

PORTRUM, J.   This suit was instituted to recover commissions due under a contract listing property for sale with a real estate agency,

which contract is alleged to have been violated by sale of the property by the owner to a customer found by the complainants, by another agency. The breach is denied by the defendant, since it is claimed that the complainants did not find and provide a purchaser willing and able to comply with the terms of the purchase as fixed in the agency contract; it is true that the complainants found a customer willing to buy, but unable to comply with the terms of purchase, but at a later date, through another agency, and because of the sale of property belonging to the applicant through that agency, the applicant was enabled to pay the purchase price for the defendant's property. And but for this independent transaction between the applicant and the second real estate agency, he would have been unable to purchase defendant's property, and for this reason the complainants did not provide an applicant willing and able to comply with the terms of the complainants' contract with the defendant.

But the chancellor did not get to the facts of the case, determining it upon a question of law upon the defense that the complainants had not complied with the statute in reference to the qualification and issuance of license to insurance agents before doing business in this state. He dismissed the bill because the complainants were doing business unlawfully, and that the contract forming the basis of the suit was void as a matter of law.

Section 1712 and subsequent of the Code provides that no person shall engage in the business of real estate agents without obtaining a license and giving a bond to the State of Tennessee, executed by two good and sufficient sureties to be approved by the clerk of the County Court, or a surety company, in the sum of $1,000, to be for the use of all persons injured or aggrieved by the wrongful acts or default of such real estate agents. And if one or more of the sureties dies, becomes insolvent, or moves from the state, or otherwise becomes undesirable, on learning of such facts, the clerk shall direct such real estate agent or real estate salesman to appear and give another sufficient bond, or in default to deliver up his license, and on failure to do so within ten days the license of such defaulting real estate agent or salesman, without more, becomes void until such bond is given to the satisfaction of the clerk, and such defaulting person shall until said new bond is given suspend business, and be liable to be proceeded against in all respect of this acting without license. And any person who shall engage in the business of a real estate agent, or real estate salesman, without having first complied with the provisions of the chapter shall, for each and every instance of such practice, be guilty of misdemeanor, and be punished by a fine.

From the foregoing it is apparent that the bond is deemed as a prerequisite to doing business as a real estate agent. The complainants, Glascock and Bright, are operating a real estate agency as a partnership. Prior to the making of the contract in question, they

made application to the clerk for a license, furnishing the affidavit and required information, and also attempted to execute a bond providing that J. A. Glascock and Gardner Bright, as principals and blank sureties, were bound, et cetera, but they signed this bond in their individual capacities, and not in the firm name, and provided no good and sufficient surety as required by statute. The clerk, we may say, inadvertently issued them a license to carry on a real estate agency. No sureties were ever procured until after the institution of this suit when an attempt was made to amend the bond by providing good and sufficient surety, it being insisted that the amendment took effect as of the original date of the execution of the bond by the principal.

Upon these facts the chancellor held that the complainants were not qualified to engage in the real estate business and that their transactions and contracts were void as a matter of law. From this decree complainants have appealed.

The assignment of error reads:

"The Chancery Court erred in holding that the complainants were not entitled to recover because they did not make the bond required by law, and in dismissing the bill;

"This was error because:

"(a) The complainants did make the bond required by law;

"(b) If the bond made by complainants in 1936 did not comply with all legal requirements, the complainants acted in good faith in the matter, executed the bond the county court clerk required, paid the application fee, paid all license fees after the execution of the bond in 1936, filed an amended bond—which certainly complied with all legal requirements—before the trial of the case, were themselves at all times financially worth several times the thousand dollar bond, and caused no damage to anyone during the period from January 1, 1936, to the date of the trial."

It is first insisted that the bond was in fact good; that each of the principals signed as principal for himself and surety for the other, and therefore the bond carried two solvent sureties. This is not according to the tenor of the bond for it provided that the signors were principals and blank sureties, but if this bond be considered as two independent bonds, then it only carried one principal and one surety and the act expressly provides for two sureties satisfactory to the clerk. A principal signing as surety for a co-principal affords no additional security, and the law contemplated additional security to that of the principals by requiring two solvent sureties. The bond as originally executed was not a bond required by the statute.

The question of good faith of the complainants and their financial worth or that any damage they may or may not have caused by reason of their operation without a bond is not a pertinent inquiry, for the reason that the statute in requiring a bond with good and

solvent surety was for the purpose of setting these questions at rest and making it unnecessary for an aggrieved person to litigate these questions in every case in the absence of the execution of the required statutory bond. The Legislature felt it so important that the bond be given as a prerequisite to doing business that a provision was made that in case of doing business without giving the bond would be a misdemeanor in every transaction subject to a substantial fine; and even in the case where the bond was given and the surety ''becomes undesirable as such surety,'' the clerk should require the giving of new surety, and in default such licensed person shall ''suspend business and be liable to be proceeded against in all respects as if acting without license.'' So long as a person did business in violation of the statutes, he committed a misdemeanor and his every act was void.

Having acted in violation of the statute and committed a misdemeanor, and having entered into a void contract, can he thereafter validate this void contract as of its inception by complying with the law? We think not, for the statute itself provides ''and such defaulting person shall until said new bond is given suspend business.'' In other words, he is expressly prohibited from carrying on business. He could not evade the provisions of this statute by carrying on business prior to the execution of the bond, and by thereafter executing the bond validate an illegal business carried on unlawfully prior to the execution of the bond. The case, as found by the chancellor, is controlled by the authority of Johnson v. Baker, 149 Tenn., 613, 259 S. W., 909.

But it is insisted that the bond is only a defective bond and may be cured under the provisions of the statutes by subsequent amendment; that a defective official bond may be enforced because of the provisions of the statute as if it were not defective. Code Sections 1836 to 1839, inclusive, are relied upon as covering the question of informal or defective official bond. These statutes were enacted for the benefit of the aggrieved parties and not for the principal, or his sureties. They cut off the way of escape for the principal and his sureties on the bond to the claims of an injured party for the protection of which the bond was given. To construe the act as affording protection to the principal as insisted here destroys the purpose of providing the protection to the aggrieved person and defeats the purposes of the act. The principal could carry on his business and enforce his contract by suit by furnishing solvent sureties after the institution of a suit against a solvent defendant; but a party who had a claim against the agent and attempted to enforce it would have no way to require the agent to procure solvent sureties and amend his bond in order that it may be enforced against him. We know no way that a principal could obtain solvent sureties after he had breached his contractual obligations. The stat-

utes were not intended to afford a remedy to the defaulting principal, but only to protect the aggrieved parties. Of course, if the principal had furnished two solvent sureties and had neglected to sign himself, he could insist that the bond was good and complied with the statutes for his signature was not necessary to fix his liability. Cambria Coal Co. v. National Surety Co., 141 Tenn., 270, 209 S. W., 641.

There are two other cases cited and relied upon by the appellants where the principal signed the bond and was later permitted to supply sureties by amendment, namely, Fraizier v. Biddle Auto Co., 138 Tenn., 428, 198 S. W., 257, and Walker v. Aetna Casualty & Surety Co., 175 Tenn., 118, 132 S. W. (2d) 219. These were appeal bonds from justice of the peace courts and the statute required that the bond be given signed by the principal and sureties, within two days of the judgment of the justice of the peace. The bonds were given but signed only by the principals, and in the Circuit Court after the expiration of two days, the court permitted the principals to amend the bonds by supplying two additional sureties. These cases would be in point but for the fact that the holdings were based solely upon the construction of the statute of the Code providing for liberal amendments in justice of the peace proceedings, and the statute under construction in these two cases has no application and is not applicable to the facts of this case.

The decree of the lower court is affirmed, with costs.

Ailor and McAmis, JJ., concur.