## 48079. BODDY v. THEILING et al.

CLARK, Judge. Does the Georgia Securities Act subject a corporation director to legal liability for sale of unlicensed stock when he takes no part in the business affairs and does not attend any meetings? Is it incumbent upon company directors who have a statutory duty to exercise the care of "ordinarily prudent men" to make inquiry concerning compliance by the company with the Georgia Securities Act? What is the meaning of the words "participated or aided" as used in Ga. L. 1957, pp. 134, 161 (Code Ann. § 97-114) when applied to a company director? These questions confront us in this case of first impression.

Mr. and Mrs. Theiling as purchasers of stock in Health Resources Corporation filed this suit against the company, its officers, and its directors asserting the sale to them to have been in violation of the Georgia Securities Act which appears in our Annotated Code as Ch. 97-1. Specifically they exercised the election to rescind for noncompliance provided by Code Ann. § 97-114. The complaint avers that the individual defendants "were each either an officer or director of Health Resources Corporation at the time of said sale, *and participated or aided* in such sale." (Emphasis supplied.)

The instant appeal involves only one of the defendant directors, Dr. A. Evans Boddy. His answer includes as an affirmative defense "That he took no part in the action complained of by plaintiff, that he had no knowledge of its occurrence and thereby is relieved of any responsibility of plaintiff." His affidavit which is made a part of his two summary judgment motions states "his duties as a physician made it impossible to attend any of the

Board of Directors meetings" and "That at the time of the transaction complained of by plaintiffs, he was a Director of Health Resources Corporation, but did not control or participate in the day to day operations or management of the corporation; did not attend any directors' meeting where a vote was taken to sell additional stock in the corporation; did not attend the August and October, 1971, nor the February, 1972 Board of Directors' meeting and cannot state whether or not the Board of Directors ever approved or voted to issue stock to plaintiffs." His affidavit further enumerates in detail his total absence of participation in any of the transactions which serve as the basis of this suit.

The depositions of the plaintiffs confirm that plaintiffs had no dealings directly with Dr. Boddy but that they assumed from his position as director that he "knew something about it." Dr. Boddy filed two motions for summary judgment in his behalf. Both were denied. Appellant enumerates as error the orders overruling his summary judgment motions. As the matter for review involves the same legal questions we will deal with the appeal as if there were only one judgment submitted for review.
*Held:*

1. The 1957 Georgia Securities Act represented our state's third[1] statute of this type intended both to protect buyers of the intrastate securities and to regulate sales of such intrastate investments in the public interest. Our first "Blue Sky"[2] legislation was enacted in 1920. When this court was called upon to consider the 1920 statute in *Brannan, Beckham & Co. v. Ramsaur,* 41 Ga. App. 166, 174 (152 SE 282), this court pointed out that "it was the intention of the legislature to throw the most rigorous restrictions around the business operations of stock promoters and others engaged in the selling of securities as a business, the purpose being to eliminate as far as possible that class of dealers who were accustomed, by artful and unscrupulous methods, to induce the unsophisticated into making hazardous or worthless investments, and in this way to

---

[1]A new securities statute (H. B. 264) was enacted at the 1973 General Assembly session. Comprehensive in scope it repeals specifically all previous legislation on this subject.

[2]This descriptive term stems from its use in Hall v. Geiger-Jones Co., 242 U. S. 539, 550 (37 SC 217, 61 LE 480), where the U. S. Supreme Court said such statutes dealt with "speculative schemes which have no more basis than so many feet of 'blue sky.' "

prey upon the public as practical cheats and swindlers." More recent legislation including the "Georgia Securities Act of 1973" which does not become effective until April 1, 1974, and particularly the Federal regulatory statutes adopted by Congress beginning with the Securities Act of 1933 has gone further than mere protection against chicanery. These statutes have sought through rigorous disclosure requirements to safeguard the investor public. The courts have in their decisions taken cognizance of this legislative intent. The result has been imposition of legal liability to stockholders upon directors innocent of wrong-doing but who permitted their names to be used as "window-dressing" or who were merely stooges for management in accepting reports without investigation or inquiry. We need cite as illustrative only the publicized cases of Escott v. BarChris Constr. Corp., 283 FSupp. 643 (S. D. N. Y. 1968) and S. E. C. v. Texas Gulf Sulphur Co., 401 F2d 833 (2d Cir. 1968) cert. den., 394 U. S. 976 (89 SC 1454, 22 LE2d 756) (1969).

Our decision in the case sub judice revolves around the interpretation to be given to the words "participated or aided" contained in the existing statute providing a right to rescind and sue for purchases of unregistered securities violative of our law. (It should be noted the Georgia Securities Act of 1973 does not use this language but instead makes a new approach to the manner in which civil liability is to be established for illegal sales of securities in § 15 of Ga. L. 1973, pp. 1202, 1250.) The pertinent language is in Code Ann. § 97-114 and imposes liability upon the "person making such sale or contract for sale, and every director, officer, salesman or agent of or for such seller who shall have participated or aided in any way in making such sale." As this particular section is the same as § 16 (1) of the Uniform Sales of Securities Act we find other jurisdictions have wrestled with this problem. The Annotation in 144 ALR 1356 contains those cases which have construed these words as requiring some activity before making a director liable as well as those to the contrary. These divergent interpretations and the underlying motivations are fully discussed in an excellent dissertation which appears in 5 Ga. L. Rev. 128 written by Columbus lawyer Gary L. Coulter in 1970 as a law student note. He pointed out that the courts in other jurisdictions have varied in their interpretation of the words "participate or aid" and concludes on p. 149 that "[C]ourts in other jurisdictions have rendered widely disparate opinions as to what elements constitute the proscribed act. Such views range from requiring a plaintiff-purchaser to show the defendant had

actual knowledge of the fraud to holding an officer or director absolutely responsible in all situations due to his official capacity in the corporate structure. Under present circumstances, it is impossible to formulate an operating definition for 'participate or aid' which would insulate the innocent from unwarranted personal liability."

This view that the innocent purchaser of unregistered securities who relies on the reputation of the parties constituting the board of directors should have a cause of action against the "do-nothing director" is supported by the purposes of the "Blue Sky Law." These laws are not only aimed at regulation of the sales of securities and to prevent perpetration of fraud, but also to provide protection for the investing public.

We therefore hold that the words "participated or aided" do not require that there be overt actions or direct activity of individuals who agree to serve as directors of a corporation.

2. Our ruling is further fortified by consideration of the duties imposed upon directors in the revision of our Georgia Corporation Law (Ga. L. 1968, p. 565). In Code Ann. § 22-713, the directors' duties are spelled out in the first sentence which reads: "Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions." Thus was established as a statutory standard that which had been previously imposed by the Supreme Court decisions of *McEwen v. Kelly*, 140 Ga. 720 (79 SE 777) and *Woodward v. Stewart*, 149 Ga. 620 (101 SE 749).

In a perceptive article by David S. Baker, 7 Ga. St. B. J. 277, 281, the author says: "While it is true that Section 713 merely enacts the common law duty standard that has existed for some time in many states, and while this standard has been expressed and applied in certain Georgia cases, the removal of the negative statutory statement on the subject in Section 710 of the prior law and the enactment of a positive statement of duty in the new law are definite steps in the direction of making directors and officers more accountable for their actions."

Kaplan's Nadler, Georgia Corporation Law, states at p. 448, § 10-18, that directors owe three major duties. These are described in three key words: Obedience, Loyalty and Diligence. The first imposes the duty to comply with the law. The second requires "a duty of undivided good faith since they are fiduciaries and

trustees of their corporation and stockholders." The author explains the use of the third key word in that "they owe a duty to exercise reasonable care and prudence, and not be mere ornaments and figureheads." An individual who agrees to become a corporation director therefore undertakes to carry out the obligations of *obedience* to the law, *loyalty* as fiduciary to the stockholders, and the *diligence* of an ordinarily prudent man. As such he cannot argue that as a matter of law he is entitled to summary judgment through nonparticipation and absence from meetings. In this connection see also *Nash v. Jones,* 224 Ga. 372 (162 SE2d 392).

3. It should be noted that our Georgia statute expressly relieves the innocent directors from any liability in that they "may rely upon financial information of the corporation represented to them to be correct by the president or the officer of the corporation having charge of its books of account, or stated in a written report by an independent or certified public accountant or firm of such accountants fairly to reflect the financial condition of such corporation." Code Ann. § 22-713. Although that Code section is thus limited, the record here does not show such exoneration. Instead, defendant director contends his complete lack of activity entitled him to a judgment as a matter of law. This "do-nothing" defense is not legally sufficient to warrant a summary judgment in his behalf.

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

SUBMITTED APRIL 5, 1973 — DECIDED JUNE 21, 1973.

*Slutzky & Wolfe, Stanley K. Wolfe,* for appellant.
*Fine & Block, Sturgis G. Bates, III,* for appellees.