## KIRKLEY *v.* SHARP.

1. As a general rule, section 2931 of the Code, which provides that if the defendant "has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud," does not apply unless the plaintiff has exercised at least ordinary diligence to discover the fraud; but failure to employ the necessary means to discover such fraud may be excused, when the plaintiff has been lulled into a sense of security by reason of a relation of trust and confidence between himself and the defendant, rendering it the duty of the latter to disclose the truth, and when it also appears that because of this confidence the plaintiff was actually deterred from sooner discovering the fraud, or even suspecting that any fraud had been perpetrated upon him.

2. In view of the allegations of the plaintiff's declaration, it was error to dismiss the same upon a demurrer based on the ground that the plaintiff's cause of action was barred by the statute of limitations.

May 23, 1896. By two Justices. Argued at the last term.

Equitable petition. Before Judge Harris. Carroll superior court. April term, 1895.

To the petition of Mrs. Kirkley against Sharp the defendant demurred on ground, that the cause of action appeared to have arisen more than four years prior to the filing of the declaration. The declaration was amended, but the demurrer was sustained.

The petition was filed to the October term, 1891. It al-

leged:    Defendant is indebted to petitioner $210, with interest since August 1, 1887.    On said day defendant executed to her a warranty deed to 35 acres of land, more or less, (describing it) for $500.    When she bought the land and took the deed a relation of trust and confidence existed between her and defendant.    In the life of her late husband he and defendant were friends, and after her husband's death defendant professed great friendship for her interest, and voluntarily became her trusted friend and adviser; and she, reposing entire confidence in his fidelity and honesty, consulted him about all business and trusted him in all things.    Pending said relations he offered to sell her the land, saying that there were 35 acres, which at $15 per acre would be worth $525, but that he would give her the $25 and take $500 for the land, assuring her that he could get and had been offered more than that for it, and that one man in town would give $700 for it.    Being a widow with little experience or judgment, and trusting defendant fully, she told him that she knew nothing about it but would trust him in the matter.    If he thought it a good investment for her, she would trade entirely on his representations and judgment, and told him to have the deed drawn accordingly. He executed the deed in her absence and brought it to her. With perfect confidence in him she supposed the deed was all right, and in accordance with his representations and contract, put it away without having it examined.    Being her sole adviser, she relied on him both as to the amount of the land and language of the deed.    She did not immediately improve the land, and had no reason or notice to suspect the quantity of the land.    Some time afterwards defendant and W. W. Root located the west line between said land and land of Root.    She was not present.    Defendant came to her afterwards and told her they had located Root's line and found her land two acres short, there being only 33 acres instead of 35, and asked her if $15 per acre for the two acres deficiency would satisfy her.    Still relying on his

fidelity and honesty, and knowing nothing of the quantity of the land except what he told her, she accepted $30 for the alleged deficiency. Afterwards, desiring to sell the land, she went to the man who defendant had told her would give $700, and learned from him that he would not give but $15 per acre, and had never offered but that price for it to defendant. In attempting to negotiate a sale, her attention was by others called to the quantity of the land, and by survey then made it was found that the tract contained but 19 acres. She immediately notified the defendant, and demanded that he repay the price of the deficiency, or lay off enough of his own similar land lying broadside on an adjoining lot to make up the 33 acres. He refused to do either, and she brings this suit for the recovery of the purchase price of the difference between 19 real and 33 alleged acres of land at $15 an acre, with interest. The deficiency is so gross as to justify the suspicion of wilful deception, or mistake amounting to fraud. In this matter defendant has acted in bad faith, been stubbornly litigious, and has caused her unnecessary trouble and expense, etc.

By amendment she alleges, that the statement made by Sharp and the payment for the two acres occurred within the last four years before the filing of this suit, and that by the conduct and statement of Sharp, as set out in the original declaration, she was kept in ignorance and prevented from discovering the mistake until within four years preceding the filing of the suit; that all the conduct and sayings of Sharp, after the execution of the deed, occurred within four years prior to the filing of the suit; that the continued relations of trust and confidence between them, and all of said statements and conduct of Sharp, were used to continue to defraud her and were so intended, and deterred and prevented her from discovering the facts and bringing her action. The discovery of the fraud was within four years before this suit, and its earlier discovery was prevented by defendant's fraud, as set out in the original declaration.

*Adamson & Jackson,* for plaintiff.

*S. E. Grow* and *W. F. Brown,* for defendant.

LUMPKIN, Justice.

This was an action by Mrs. Kirkley against Sharp. The substance of her declaration and of an amendment to the same are stated by the reporter. The trial judge, upon an oral demurrer made by the defendant, dismissed the case on the ground that the declaration showed upon its face that the plaintiff's cause of action, not having been brought within four years from the time the right accrued, was barred by the statute of limitations.

The case is not entirely free from difficulty, but after some reflection we have concluded that the better holding is, that under the facts alleged, the plaintiff is not barred. As a general rule, fraud, until discovered, prevents the statutory bar from attaching; but it is now well settled in this State that there must be reasonable diligence to detect the fraud. *Marler* v. *Simmons,* 81 *Ga.* 613, and cases cited. It seems, however, that the rule just stated is subject to some degree of modification or relaxation in cases where the plaintiff has been lulled into a sense of security by reason of a relation of trust and confidence between himself and the defendant, rendering it the moral duty of the latter to disclose the truth, and where, because of this confidence, the plaintiff has been actually deterred from sooner discovering the fraud, or even suspecting its perpetration. In such cases the failure to employ the necessary means to discover the fraud is sometimes held to be excusable. In the case of Gibbs *v.* Guild (1882), 9 Q. B. Div. 59, it was held, that in an action to recover by way of damages money lost by the fraudulent representations of the defendant, it was a good reply to a defense of the statute of limitations that the existence of the defendant's fraud was fraudulently concealed by him for more than six years before the action was brought, and that consequently the plaintiff did not

discover, and had no reasonable means for discovering, the fraud within the six years. Among the cases relied on in support of the judgment of Field, J., which was affirmed by the court of appeal, was that of Bree *v.* Holbeck, 2 Doug. 655, in which we find certain *dicta* of Lord Mansfield in accord with the conclusion announced. In 13 Am. & Eng. Enc. of Law, 727 and 728, it is stated that "in equity, a fraudulent concealment of a cause of action on the part of the defendant may keep the statute from running. It is held that the defendant forfeits his right to set up the statute of limitations where he has concealed his own fraud during the term of the statute, and that having himself by fraud made the statute run in his own favor, he cannot take advantage of it." The text then proceeds to lay down that it has been held that the term set by the statute of limitations is absolute as to cases arising at common law, and that in such cases the operation of the statute cannot be delayed except by express statutory provisions. Attention, in this connection, is called to the fact that in Georgia (evidently referring to the act of March 6th, 1856—Acts of 1855-6, p. 236; Code, §2931) and some other States, such provisions are incorporated in the statutes, and it is further said that: "Even in their absence, there is a general tendency to hold that since the statutes of limitations are designed to suppress fraud, they should not be so construed as to encourage fraud, if they admit of any other reasonable interpretation." It is also remarked (p. 729) that "it is well to remember that the fraud in question is not that which gives, but that which conceals a cause of action," citing the case of Gibbs *v.* Guild, *supra*, which, it is said, reviews all the English authorities and holds that even since the judicature act of 1873, "by which common law and equity, in a certain sense, were both abolished," a fraudulent concealment of a cause of action will delay the operation of the statute.

The question now under consideration was also touched

upon by Judge Lumpkin in the case of *Conyers* v. *Kenan et al.,* 4 *Ga.* 308.   On page 315, he refers to the case of Bree *v.* Holbeck, cited above.

In Maryland, the statute provides that usual and ordinary diligence must be used to discover the fraud; and under this statute it was held in Wear *v.* Skinner, 46 Md. 257, that concealment of the original fraud was enough, without the perpetration of another and independent fraud, to excuse the adverse party for remaining in ignorance.   See, also, 2 Wood on Limitations, 701 to 712, and cases cited in note 2 on the latter page, all of which are more or less in point, among them being the case of Wear *v.* Skinner, *supra,* and also that of Vigus *v.* O'Bannon, 118 Ill. 334. From the opinion of Magruder, J., we take the following pertinent extract, to be found on page 346 of the report last cited:   "The rule that, in cases of fraud, the statute of limitations begins to run only from the time of the discovery of the fraud, will not apply where the party affected by the fraud might, with ordinary diligence, have discovered it.   But the failure to use such diligence may be excused where there exists some relation of trust and confidence, as principal and agent, client and attorney, *cestui que trust* and trustee, between the party committing the fraud and the party who is affected by it, rendering it the duty of the former to disclose to the latter the true state of the transaction, and where it appears that it was through confidence in the acts of the party who committed the fraud that the other was prevented from discovering it."   In Norris *v.* Haggin, 136 U. S. 386, it was held that the plaintiff was guilty of *laches* in failing sooner to discover the alleged fraud from the consequences of which he sought relief; but Mr. Justice Miller seems to recognize the principle for which we are contending, as will appear from a *dictum* on page 392 in the following language:   "It is a part of this general doctrine, that to avoid the lapse of time or statute of limitation, the fraud must have been one which was

concealed from the plaintiff by the defendant, or which was of such a character as necessarily implied concealment."

On the whole, therefore, we conclude that the court erred in dismissing the plaintiff's action. In view of the allegations contained in the declaration, it was not, in our opinion, barred by the statute of limitations.

*Judgment reversed.*