26488, 26489.   MIDDLETON *v.* PRUDEN *et al.;* and *vice versa.*

Decided March 18, 1938.

*Maddox & Griffin,* for plaintiff.   *Barry Wright,* for defendants.

MacIntyre, J. Middleton, the plaintiff in error, brought suit in the superior court of Floyd County to the April term, 1935, asking for a rescission and cancellation of a bond for title given him by Mrs. Pruden and her two daughters in 1919, on the ground that the trade for the land was induced by the fraudulent statement of one of the vendors, Mrs. Pruden, as to title; that in the exercise of due diligence he had only recently, in 1934, discovered the false statement as to the title, and had discovered that the title was unmarketable in that there were contingent remainders outstanding against which he had no protection. Mrs. Pruden and the other two defendants in that case filed demurrers. These demurrers were overruled in the superior court and they took a bill of exceptions to the Supreme Court where the case was reversed on the ground of laches of the plaintiff Middleton in bringing his action. *Pruden* v. *Middleton,* 182 *Ga.* 687 (186 S. E. 732). After the remittitur was sent down to the clerk of the trial court the case was dismissed. Middleton thereupon brought this second suit on the same statement of facts to the January term, 1937, of the superior court of Floyd County, but on the law side of the court. The second suit was a tort action based on fraud and deceit, alleging, in general language, actual and intentional fraud in the representations as to the title instead of the fraud as alleged in the original equity suit. Otherwise the allegations were substantially the same, but the prayers in the second suit were for damages in tort.

The defendants contend that the plaintiff's action is barred by the statute of limitations. In the instant case the petition alleged that the deed, which showed that there were outstanding contingent remainders which made the title defective, was recorded in 1877, and that the bond for title was made September 20, 1919, and although the false representations were made on that date, the plaintiff did not discover the falsity thereof until September, 1934. As we construe the petition, the only false and fraudulent representation alleged was that Mrs. Pruden told the plaintiff, before the bond for title was made, that when her two children arrived at the age of twenty-one she could make the plaintiff a good title, and after her two children became of age she stated that she could now make him a good title and the trade was then made. We might here say that these statements would indicate that, for

some unstated reason, if the defendant did convey title to the plaintiff prior to the time her children became of age the title would be defective. Then, is it not the natural inquiry why, after the children became of age, would the title become good? Especially since the defendant gave no definite or specific reason why the title would have been defective up until this time? Then, would not the natural thing be to make some investigation as to why this change in the status of the title existed? And would not a resort to the deed record have shown how and in what manner the defendant obtained the title, and would it not have likewise disclosed the defect in the very deed by which the defendant claimed title?

The Code, § 3-807, provides, "If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud." In determining whether fraud by which the plaintiff had been "debarred or deterred" from his action mentioned existed, we should in order to differentiate it (in a sense, insulate it), from the allegations of fraud from which the cause of action sprang. And then we should look only to the facts (in their relation to the tolling of the statute of limitations), to see whether or not that kind of fraud mentioned in said section has been alleged, and it should be borne in mind that constructive fraud as well as actual fraud might give rise to a cause of action, whereas the only kind of fraud which would toll the statute of limitations is actual fraud. If this were not true, there would be no statute of limitations against fraud which gave rise to a cause of action unless and until it was discovered, even though it were obvious that the fraud could and should have been discovered by the exercise of ordinary care. In considering the issue whether or not the statute of limitations is tolled until the discovery of the fraud, the special difficulty may to some degree disappear if we bear in mind that the fraud which gave rise to the cause of action may be considered only as a circumstance incidental to the proof of guilt of a fraud by which the plaintiff has been "debarred and deterred" from bringing his suit. In this State the courts have held that the fraud referred to in the Code, § 3-807, which tolls the operation of the statute of limitations, is

not necessarily the same fraud which gives rise to the cause of action. The fraud referred to in this section must be actual fraud involving moral turpitude. *Barrett* v. *Jackson,* 44 *Ga. App.* 611 (159 S. E. 768). In this case the cause of action (if any) sprang from the fraudulent act of the defendant, Mrs. Pruden. It is not always an easy matter to distinguish between fraud that is the gist of the action and the fraud "by which the plaintiff shall have been debarred or deterred from his action." While the fraud in a particular case may be sufficient to give to the complaining party a right of action, still it may not in the same case be also sufficient to serve to conceal the cause of action within the contemplation of the law. Referring to the following statute of Indiana, "If any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action," the court said: "The acts constituting a fraudulent concealment ordinarily must be subsequent to the accruing of the cause of action, 'but they may be concurrent or coincident with it or even precede it provided they are of such a nature or character as to operate after the time when the cause of action arose, and thereby prevent discovery, and was so designed and intended by the concealor;'" and held that where the defendant "simply remained silent from said first day of September, 1894, to the date of his death [on July 28, 1910], neither revealing nor actively concealing anything," these facts were not sufficient to constitute such a concealment as would suspend the operation of the statute. Caldwell *v.* Ulsh, 103 N. E. 879. "The claim of the vendee against the vendor of real estate for damages for fraudulent representation as to title accrues immediately on the perpetration of the fraud, and is not postponed to such time as he sustains actual loss." 2 Wood, Lim. (4th ed.), 1377 (66). In Smith *v.* Blachley, 198 Pa. 173 (47 Atl. 985, 53 L. R. A. 849), it was stated: "The cases which hold that, where fraud is concealed, or, as sometimes added, conceals itself, the statute runs only from discovery, practically repeal the statute pro tanto. Fraud is always concealed. If it was not, no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If plaintiff bestirs himself to inquire, he has ample time to investigate and bring his

action. If both parties rest on their oars, the statute runs its regular course. But if the wrongdoer adds to his original fraud affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery."

With reference to confidential relationship, the petition alleged that the plaintiff had been a tenant on the place or land in question for fifteen years, and during that time had many transactions with Mrs. Pruden, one of the defendants, and her husband, and he had the utmost faith in them and never questioned any statement that might have been made by either of said parties but accepted the same as being true. These allegations do not show any relation occupied by the plaintiff and defendant toward each other which is known in the law as a confidential relationship. *Crawford* v. *Crawford,* 134 *Ga.* 114 (67 S. E. 673, 28 L. R. A. (N. S.) 353, 19 Ann. Cas. 932); *Phipps* v. *Wright,* 28 *Ga. App.* 164 (110 S. E. 511); *Brinsfield* v. *Robbins,* 183 *Ga.* 258, 272 (188 S. E. 7). In the absence of any confidential relation, fraud, which tolls the statute of limitations, must be such fraud as could not have been discovered by the exercise of ordinary care. "Ignorance of fraud which, by use of ordinary diligence, might have been discovered in due time, will not hinder the statute of limitations from running." *Freeman* v. *Craver,* 56 *Ga.* 161. "Fraud which must have been discovered if usual and reasonable diligence had been exercised, is not a good reply to the statute of limitations." *Sutton* v. *Dye,* 60 *Ga.* 449; *Kirkley* v. *Sharp,* 98 *Ga.* 484, 489 (25 S. E. 562). Thus, after eliminating any question of confidential relation, the question then arises, could the fraud that gave the cause of action have been discovered by the exercise of ordinary care? If we should concede that the alleged fraud which gave rise to the cause of action would have been constructive fraud, and sufficient to be the basis of a cause of action, and then further concede that the alleged fraud was actual fraud involving moral turpitude, we are still confronted with the proposition that there was no concealment, in that the deed was on record and the record was available to any one who wished to see or examine it; that there was no relation between the parties which is known in the law as confidential relationship; and, lastly, that there was a state of facts which we think shows that the defect in the title could

have been discovered in the exercise of ordinary care, and that, even under the above concession, the allegations of the petition disclose that the plaintiff did not exercise due diligence to discover such defect.

We wish to make it plain that there is a distinction between fraud that will entitle the plaintiff to bring an action for rescission and a fraud that would toll the running of the statute of limitations. While both of these frauds are included in the term "legal fraud," the fraud that tolls the statute is that branch of legal fraud known as actual fraud which "debarred and deterred" the plaintiff from bringing his suit. A fraud which concealed the cause of action would be such a fraud (*Kirkley* v. *Sharp,* supra), when used in the sense of the following definition: "To constitute concealment of a cause of action so as to prevent the running of limitations, some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent." Black's Law Dictionary, 3rd ed. Whereas, the fraud that would entitle the plaintiff to bring an action for rescission may be either actual fraud, as above defined, or only constructive fraud. In either event, the plaintiff would have a right to rely on the statements of the defendant as to title (where the question being considered is only the fraud which gives rise to the cause of action), regardless of the fact that at the time the plaintiff could have broken away from the trade in question and have examined the records and discovered the true facts. " 'It is well to remember that the fraud in question is not that which gives, but that which conceals a cause of action.'" *Kirkley* v. *Sharp,* supra. Relative to the fraud "which gives a cause of action," the plaintiff can, during the period fixed by the statute of limitations, rely upon the representation of the defendant and take it at its full face value (that is, in a sense, accept it unqualifiedly) ; but the fraud "which conceals the cause of action" (that is, the fraud that "debars or deters," referred to in the Code, § 3-807), not being limited to any time, save the time of discovery, the plaintiff can not rely unqualifiedly upon such representation but must exercise ordinary care to discover it. The defendants, in their relation with the plaintiff, subsequently to the sale of the land, neither said nor did

anything to mislead him respecting the true situation, or to prevent, debar, or deter him from making the fullest inquiry. The plaintiff simply remained silent from September 20, 1919, until September 12, 1934, nearly fifteen years, neither revealing nor actively concealing anything, and for fifteen years the plaintiff was in the possession of the property, and failed, during this period, to discover the fraud which he could have done by the exercise of ordinary care. It appeared from the pleading that the period fixed by the statute of limitations had expired before the bringing of the suit. The facts alleged in the petition are not sufficient to suspend the operation of the statute of limitations.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Guerry, J., concur.*