## ADAMS *v.* HIGGINBOTHAM *et al.*

No. 14126. JULY 15, 1942.

*Kay Tipton* and *Miles W. Lewis,* for plaintiff in error.
*W. F. Manley* and *Joseph G. Faust,* contra.

REID, Chief Justice. This case proceeded to a trial before a jury, following the decision as reported in *Higginbotham* v. *Adams,* 192 *Ga.* 203 (14 S. E. 2d, 856). Upon the evidence the judge directed a verdict for the plaintiff as to the amounts involved, except that portion excluded by the former decision on demurrer as barred by the statute of limitations. This verdict and judgment, while not in terms so, will be treated, in conformity to the pleadings, as having the effect of setting aside the previous judgment against Mrs. Higginbotham as executrix of the will of her deceased husband. Upon the overruling of Adams' motion for new trial he assigns error, among other grounds, on refusal to submit the issues in the case to the jury.

It is to be remembered in considering the case now before us that the issue is not merely as to the *validity* of the judgment here sought to be set aside, but rather as to whether it was ob-

tained by fraud and collusion. The full nature of the case may be seen from the report of our former decision, supra. There it was said: "It is also the law, that, in the absence of fraud and collusion between the executor and a creditor, a judgment regularly rendered in a court of competent jurisdiction in favor of the creditor and against the executor is conclusive upon legatees and creditors, as to all matters adjudicated. *Morris* v. *Murphey,* 95 *Ga.* 307 (22 S. E. 635, 51 Am. St. R. 81) ; *Houston* v. *Campbell,* 151 *Ga.* 180 (106 S. E. 87) ; *Stringer* v. *Wheeler,* 161 *Ga.* 91 (129 S. E. 634) ; *Clark* v. *Tennessee Chemical Co.,* 167 *Ga.* 248 (5) (145 S. E. 73). Assuming for the present that the judgment attacked by the petition is regular on its face, the right of the petitioner to maintain this action is, on application of the foregoing rulings, dependent upon whether or not it alleges fraud and collusion." It was further ruled (p. 207) that "If these allegations are true, *and they must be so taken on demurrer,* the executrix has violated her trust and injured the estate and derived a personal benefit therefrom." (Italics supplied.)

When evidence was offered, a different case was presented. The petition alleged that Mrs. Higginbotham was without authority under the will to bind the estate by purchase of an automobile; that Adams knew this; that Adams, knowing the notes involved were personal obligations of Mrs. Higginbotham and not obligations of the estate, nevertheless took a judgment against her in her representative capacity [fraudulently] intending to bind the estate for her personal obligation; that Mrs. Higginbotham acted in the transaction "through the inducement of said W. H. Adams." While it is not deemed necessary to adjudicate the somewhat closer question whether, in the circumstances, she did have authority under the will so to purchase and use the car for the benefit of the estate, it may be said that except as related to that question there was no proof of the foregoing allegation of the petition, which had to be treated as true on the former appearance of the case when only the demurrer was involved. The evidence showed, that, under a provision of Mr. Higginbotham's will that his estate be "kept together until my youngest child shall become twenty-one years, and all of [my] children shall have an opportunity to take a college education," the executors had continued the operation of three farms, one of 333 acres located nine miles west of Madison,

one of 373 acres three miles from Madison, and another of 39 acres in Madison, one of these being operated as a dairy farm from which it was necessary to make deliveries of milk; that before his death Mr. Higginbotham had owned and used two or three automobiles in connection with general family purposes and the operation of these farms; that Mrs. Higginbotham after his death traded two of these as purchase-price of another, and in turn had traded it, together with one of the notes now involved (the other note apparently being given for repairs), in the purchase of another and had actually used the car for the foregoing purposes. The proof also showed that Adams never saw Mrs. Higginbotham personally in connection with the sale of the car or the suit which resulted in the judgment on the notes. When his salesman negotiated the sale with Mrs. Higginbotham and reported that she wished to give the note, Adams held up the sale until he could investigate as to her right in connection with the estate to make the purchase. He inquired of her coexecutor, Mr. Bearden, who said to wait until he could "see Judge Park" (then judge of the superior court), and later reported to Mr. Adams that it was all right, and "he told me to go ahead and make the deal." As to the bringing of the suit, judgment in which it is sought to set aside, the attorney for Adams stated that when the notes were turned over to him for collection he wrote and mailed to Mrs. Higginbotham certain letters about their payment and the liability for attorney's fees; that he had no reply to them, had never met her, and had no communication with her. The plaintiff testified that the executrix had to carry on the farms including the dairy, and in substance that while an automobile might be necessary in this connection he thought she made a mistake in buying the car, that she should have rented one. The foregoing states substantially all the evidence, except that the plaintiff introduced a proceeding (admitted over objection) in the superior court of that county between the executors of the Higginbotham will and the legatees and heirs, to which Adams was not a party (this being the ground of the objection), where Judge Park, upon construction of the will, had held that the executrix "would not have the right to buy an automobile and charge it up to the estate." Thus the plaintiff offered no proof of "fraud and collusion between the executor and a creditor," but chose to rely, as counsel do in their briefs, on the statement made in the former

295

opinion in the case (192 *Ga.* 207-208), as follows: "The bad faith of the creditor is indicated by his seeking a judgment against the estate in a suit setting up only the individual obligation of the executrix, without any attempt to allege a reason why the estate should be held liable therefor. If the averments of the petition are true, the creditor could not have made allegations to show liability of the estate. If such allegations had been made and were false, they would have constituted a fraud authorizing a court of equity to set aside the judgment. *Hamilton* v. *Bell,* 161 *Ga.* 739 (132 S. E. 83). His judgment is not rendered valid simply because he refused to make essential allegations because they would have been false. By knowingly leaving out such averments, which were essential to entitle him to a judgment, then taking a judgment by default against a willing executrix, the fraud is consummated by other methods it is true, but fraud nevertheless." That statement of course is sound and correct, but its soundness and correctness depend upon the truth of the transaction as presented by the petition in this case. As there clearly pointed out, its truth could not be questioned on demurrer. Mr. Justice Duckworth was careful to state that "Certainly it will be understood that we do not mean to intimate that any such fraud or collusion actually existed as a matter of fact. We are dealing only with the allegations of fact in the present petition, which, as indicated above, must be treated as if true for the purpose of decision where considered on demurrer."

Fraud may not be presumed (Code, § 37-706); and while it may be proved by circumstances, it must nevertheless be proved. *Liberty Lumber Co.* v. *Silas,* 181 *Ga.* 774, 778 (184 S. E. 286); *Watson* v. *Brown,* 186 *Ga.* 728, 731 (198 S. E. 732); *Colquitt* v. *Thomas,* 8 *Ga.* 258 (3). Based upon these considerations, the verdict for the plaintiff was not demanded, and was improperly directed. If upon another trial the evidence of these questions under discussion should be substantially the same, a verdict for the defendant would be demanded.

■ Ruling is invoked by one ground of the motion for new trial upon the admission in evidence of the record of the judicial proceedings referred to in the foregoing division of this opinion, where a judgment had been entered construing the will as to the authority of the executors to charge the purchase of an automobile against

the estate. The objection that Adams, "not being a party thereto, was not bound by any decision made therein," and that it threw no light on the controversy, was timely made. The Code, § 110-501, declares: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." See § 3-607. This judgment, entered in a proceeding to which Adams was not a party and of which it does not appear he had any notice, could not bind him. *Stanley* v. *Laurens County Board of Education* 188 *Ga.* 581 (2) (4 S. E. 2d, 164); *Hart* v. *Manson,* 119 *Ga.* 865 (4) (47 S. E. 345); *Hughes* v. *Treadaway,* 116 *Ga.* 663 (2) (42 S. E. 1035). A judgment of construction in such a situation as between the executors and beneficiaries is rather for the protection of the executors, and is not intended to bind strangers to it. Whether, since under the rulings made in division one such a judgment could hardly affect the question of fraud and collusion and might therefore be regarded as harmless, a new trial would be ordered on this ground alone need not be determined.

■ The court properly refused to submit to the jury the so-called cross-bill of the defendant. This was a portion of the defendant's answer in which it was contended that the plaintiff had received more than his share of the estate in distribution; and that since the automobile for purchase and maintenance of which the notes were given was a proper and prior charge against the estate, the plaintiff should be required to respond [ratably?] to the judgment. There was a prayer for such relief, and also for judgment against Mrs. Higginbotham, individually and as executrix. The defendant already had such a judgment against her; and without ruling on the propriety of such a remedy against the plaintiff, it may be safely stated that there was no sufficient basis in the evidence to warrant the submission of such an issue.

*Judgment reversed. All the Justices concur.*