**KICKLIGHTER v. NEW YORK LIFE INS. CO.**

No. 10990.

Circuit Court of Appeals, Fifth Circuit.

Oct. 30, 1944.

Alexander A. Lawrence, of Savannah, Ga., and Joseph T. Grice, of Glennville, Ga., for appellant.

A. R. Lawton, Jr., of Savannah, Ga., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This is a suit by the administrator of the estate of Dr. J. L. McLean, deceased, to recover upon a policy of life insurance, a Georgia contract, issued to the decedent by the New York Life Insurance Company. The policy, in the sum of $5,000 and payable to the decedent's estate, was dated February 22, 1912, and was alleged to be in full force and effect on December 21, 1912, on which date the insured died intestate. The bill of complaint, which was not filed until 1943, alleged that the delay in instituting the action was attributable to fraudulent acts of the insurer that prevented the discovery of the existence of the policy and the cause of action thereon until 1940, after which time due diligence was exercised in prosecuting the suit thereon.

The court below dismissed the suit on the grounds that the complaint failed to show that reasonable diligence was exercised to discover the alleged fraud, and failed to allege any fraudulent acts of the insurer sufficient in law to toll the statute of limitations. The third defense, laches, was not considered by the court. From the judgment entered, the administrator has appealed.

These are the facts set forth in the pleadings: When Dr. McLean purchased the policy in 1912, he paid the full annual premium of $311.60, giving the agent of the insured $117.16 in cash and executing a promissory note payable to the agent for the balance of $194.44. The agent discounted the note at a local bank. In the fall of 1912, Dr. McLean became apprehensive that he would not be able to pay the note at its maturity, and he offered to surrender the policy to the company if it would return to him his note. His offer was ignored, and Dr. McLean still owned the policy in full force and effect on December 21, 1912, the date of his death.

Mrs. McLean, the insured's widow, knew of her husband's efforts to recover his note. Being ignorant in affairs of business, and unaware that rights under the policy had matured, but desirous of fulfilling her husband's wishes, she advised the company that her husband was dead, and renewed the offer to surrender the policy in consideration of the return of the note. The insurer quickly purchased the note from the bank for $207, and on January 7, 1913, its representative exchanged the note for the policy. In addition to his widow, Dr. McLean was survived by two married children and a minor son ten years old. These children were not aware of the existence of the policy, and were not advised of the acts of their mother in connection therewith.

In February, 1913, letters of administration were granted to Mrs. McLean and L. H. Kicklighter; the estate was thereafter administered, its debts paid in full, and the administrators were discharged in 1916. The insurer, well knowing that the widow was without any authority to surrender the policy to it, continued to hold it and to conceal from the co-administrator and the children the fact of existence of the policy and the means by which the insurer secured possession of it. Appellant was appointed administrator of the estate in 1943 for the purpose of instituting this action in his representative capacity. He conceded that the widow's conduct and her failure to prosecute with diligence her rights, of which she was charged with knowledge, precluded the enforcement thereof; the prayer was for judgment in the sum of three-fourths of the face value of the policy, $3,750, less the $207 advanced by the insurer in payment for the note, with statutory interest from February 1, 1913, plus a penalty of twenty-five per cent, and a reasonable attorney's fee.

From these facts, it is clear that upon the death of the insured and the communication of notice thereof to the insurer, that company became legally obligated to pay the sum of $5,000 to the administrator of the decedent's estate. This much the insurer seems to concede, but it contends that the cause of action no longer is enforceable by reason of (1) the failure of the heirs at law to exercise due diligence to discover the fraud, (2) the running of the statute of limitations, and (3) laches.

■ Laches is a doctrine formulated by courts of equity to provide a rule of limitations where no statute of limitations is applicable to equity suits.[1] It has no application in this suit at law where a statute of limitations is provided.

The statute of limitations applicable is Section 705 of Title 3 of the Georgia Code Annotated, which provides that all actions upon simple contracts in writing shall be brought within six years after the same shall have become due and payable. Appellant seeks to avoid the force of this statute by invoking Section 807 of Title 3 of said Code, which provides that if a defendant shall have been guilty of a fraud by which the plaintiff shall have been deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud.

The history and interpretation of this statute is of importance here upon the question of due diligence of the heirs at law as well as that of limitation. In the leading case of Persons v. Jones, 12 Ga. 371, 58 Am.Dec. 476, decided in 1853, the Supreme Court of Georgia for the first time ruled upon the effect of actual fraud as tolling the statute of limitations in an action at law. Though discussing and admitting the force of the New York rule to the contrary, the court definitely committed itself to the principle announced by Lord Mansfield in Bree v. Holbeck, 1 Doug. 656, by Chief Justice Parsons in First Massachusetts Turnpike Corp. v. Field, 3 Mass. 201, 3 Am.Dec. 124, and by Judge Story in Sherwood v. Sutton, Fed.Cas.No.12,782, 5 Mason 163. The principle may be stated thus: If the knowledge of the existence of the cause of action is fraudulently concealed by the defendant, the delay in bringing the action is owing to the fraud of the defendant, and for purposes of limitation cause of action should not be considered as accrued until the discovery of the fraud, for the reason that the fraud continues during the whole period of its concealment inseparable from the original wrong. This pronouncement received the stamp of approval of the Georgia Legislature at its sub-

[1] Wagner v. Baird, 7 How. 234, 12 L. Ed. 681; Stearns v. Page, 7 How. 819, 12 L.Ed. 928; Philippi v. Philippe, 115 U.S. 151, 5 S.Ct. 1181, 29 L.Ed. 336; Alsop v. Riker, 155 U.S. 448, 15 S.Ct. 162, 39 L.Ed. 218; Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754.

sequent session in 1855–56 in the enactment of the statute now appearing as Section 807 of Title 3, supra.

Subsequent interpretations of this statute by the Georgia court are carefully analyzed in the recent case of Middleton v. Pruden, 57 Ga.App. 555, 196 S.E. 259, wherein it is held that actual fraud, which conceals rather than creates the cause of action by some affirmative trick or artifice to prevent inquiry or elude investigation, and which hinders the party who has the cause of action from obtaining information, operates to toll the running of the statute until the cause of action is discovered. See also Kirkley v. Sharp, 98 Ga. 484, 25 S.E. 562.

■ This appeal clearly presents a case to which these principles are applicable. The cause of action was created by the insurance contract and the death of the insured; the concealment of the existence of that cause of action resulted from the conduct of the insurer in securing possession of the policy, by its affirmative fraudulent act, from among the personal effects of the decedent prior to the appointment of an administrator, and in concealing thereafter all information relative thereto. There can be no doubt that the fraud of the insurer deterred the co-administrator and the heirs-at-law from finding the policy and enforcing payment of the liability accrued thereunder, and that the continuous fraudulent concealment of the policy itself, the only tangible evidence of the cause of action, continued the fraud during the entire period of its concealment and until 1940. After the date of the discovery of the cause of action, due diligence was exercised to prosecute that action within the time allowed by statute.

It follows that the complaint should not have been dismissed. For that error, the judgment appealed from is reversed, and the cause remanded to the court below for further proceedings not inconsistent with this opinion.