**KICKLIGHTER v. NEW YORK LIFE INS. CO.**

No. 11696.

Circuit Court of Appeals, Fifth Circuit.

Nov. 6, 1946.

Rehearing Denied Dec. 2, 1946.

HUTCHESON, Circuit Judge, dissenting.

784

Alexander A. Lawrence, of Savannah, Ga. and J. T. Grice and B. D. Dubberly, both of Glennville, Ga., for appellant.

A. R. Lawton, Jr., of Savannah, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On the former appeal this court reversed a judgment of dismissal and remanded the case for further proceedings. The nature of the action is fully discussed in the prior opinion. Kicklighter v. New York Life Ins. Co., 5 Cir., 145 F.2d 548. After remand, trial was had before a jury, and on direction of the judge verdict was returned for the defendant insurance company on the following grounds: "1. Because the premium had not been paid at the time of the death of Dr. McLean. 2. Because plaintiff's long delay in bringing this suit made ascertainment of the truth so difficult that plaintiff should not recover. 3. Because the cause of action, if any ever existed, has been barred by the statute of limitations." From the judgment entered on the directed verdict, the administrator has appealed, contending that the evidence supported the pleadings and made up a case for the jury.

In support of the judgment, appellee first contends that the premium was not paid and that the policy of insurance was not delivered during the life of the insured.

The policy in suit contained a recital acknowledging receipt of the first premium. Mrs. McLean, the widow of the named insured, testified that the policy had been entrusted to her keeping by her husband and that it was in her possession at the time of her husband's death in December, 1912. She further testified that she saw Mr. Easterling, the company's agent, leave the policy with Dr. McLean "and the doctor gave him the note * * * for a part of the first premium. * * * as to how Dr. McLean paid the difference between the amount of the note and the first premium I am not positive; I think Mr. E. E. Banks

was there at the time, and Dr. McLean did not have cash all the time and this Mr. Banks I think let him have the money, that is the best of my recollection."

Mr. Banks testified that one afternoon while Mr. Easterling was at the McLean home, Dr. McLean came to him and told him he had taken out a policy "and lacked a little money having enough cash money to pay for it, and it was either $7 or $12 and I had it in my pocket."

The note which Dr. McLean gave to agent Easterling, was discounted by Easterling at the Tattnall Bank in Reidsville, Georgia. The insurance company's rules recognize that agents may at times accept notes for payment of premiums, and provide: "If an agent does take a note for the first premium, it is a business arrangement between himself and the applicant and he must pay the premium to the Company in cash." If Dr. McLean gave the note to agent Easterling and paid the balance of the premium in cash, the first premium was effectually paid. If Easterling failed to remit the premium to the company, that is a matter between the company and its agent. The agent's failure to remit does not affect the validity of the policy.

The insurance company contends, however, that "not a penny of cash" was ever paid to make up the balance of $116.66 between the face of the note and the amount of the first premium. This may be true, but the evidence does not demand such a finding. Indeed, the jury, if it believed the testimony of Mrs. McLean and Mr. Banks, might properly find that full payment of the first premium was made. Robinson v. Union Central Life Ins. Co., 5 Cir., 144 F. 1005; Cf. Reliance Life Ins. Co. v. Hightower, 148 Ga. 843, 98 S.E. 469.

On the question of delivery of the policy and possession of it by the insured at the time of his death, Mrs. McLean positively testified that the policy was delivered to Dr. McLean in her presence, and that she had the policy in her trunk when Dr. McLean died. She stated that she retained possession of the policy after Dr. McLean's death until she surrendered it to the company in exchange for the note which Easterling had sold to the bank. Contrary to

Mrs. McLean's testimony, the insurance company attempted to show by its records that the policy had not been delivered to Dr. McLean, but had been returned to the home office and marked "not taken" in June, 1912, several months before Dr. McLean died. The evidence did not demand a finding for the insurance company. The evidence on the questions concerning payment of the first premium and delivery and possession of the policy raised sharp issues which depended for solution upon the credibility of the witnesses, the weight of the evidence and the inferences to be drawn therefrom. This was a jury function. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Yarbrough v. Prudential Ins. Co. of America, 5 Cir., 99 F.2d 874; Kansas City Life Ins. Co. v. Williams, 59 Ga.App. 66, 68, 200 S.E. 329.

■ The former opinion of this court pointed out that fraud tolls the Georgia statute of limitations. Georgia Code § 3-807. The insurance company contends that there is no proof of fraud in this case. Fraud depends upon the proven facts. Georgia Fruit Growers v. Vaughn, 45 Ga. App. 17, 163 S.E. 221.

■ The policy in suit was payable to the estate of Dr. McLean. Appellant's evidence is to the effect that after Dr. McLean died, and before administration of his estate, Mrs. McLean, acting individually and not as a representative of the estate, offered to surrender the $5,000 policy if the insurance company would redeem and return to her Dr. McLean's note which agent Easterling had sold to the bank. The insurance company responded, purchased the note from the bank, and, if Mrs. McLean's testimony is to be believed, gave Mrs. McLean the note, a $207 liability of the estate, and secured in return the policy, a $5,000 asset of the estate. If Mrs. McLean's testimony is to be believed, the company took the policy of insurance, and no advice of its existence was ever given either by the company or Mrs. McLean to the heirs or co-administrator of the estate who was appointed with her at a later date to administer the estate. Again, the insurance company's version of what happened upon the surrender of Dr. McLean's note is wholly at variance with Mrs. McLean's testimony. On this conflict, it was for the jury, not the trial judge, to say who was right.

■ Because of the knowledge of Mrs. McLean, who was entitled to one-fourth of Dr. McLean's estate, she has relinquished any right to recover and the administrator seeks recovery of only three-fourths of the face amount of the policy less the amount of the note. The fact that Mrs. McLean was later appointed an administrator of the estate did not impute her knowledge of the surrender of the estate's policy to the co-administrator and her knowledge did not bind the other heirs. At the time she surrendered the policy, she had no right to act for or to bind the estate, and for many years thereafter neither the co-administrator nor the heirs knew of the pre-administration transaction between Mrs. McLean and the insurance company. See Executors and Administrators, 21 Am.Jur. § 751, p. 803.

■ At all times the burden was on the plaintiff to prove the issues raised by the pleadings. Accordingly, evidence was introduced on the disputed points, and on the evidence now in the record it was for the jury, and not the trial judge, to weight the evidence and draw the inferences. It was for the jury to say: (1) Whether the premium was paid and the policy delivered. (2) Whether, if the policy was in force and effect, the company was guilty of fraud in surrendering to an unauthorized person a $207 liability of the estate and securing therefor the policy, a $5,000 asset of the estate. If an actual fraud was perpetrated and the facts thereafter concealed and kept from light so that interested persons were deterred from action, the Georgia statute of limitations was tolled and this action was instituted within time. Persons v. Jones, 12 Ga. 371, 58 Am.Dec. 476; Middleton v. Pruden, 57 Ga.App. 555, 196 S.E. 259; American National Bank v. Fidelity & Deposit Co., 131 Ga. 854, 859, 63 S.E. 622, 623, 624, 21 L.R.A.,N.S., 962.

■ We find no merit in the contention of the appellee that we should apply the equitable bar of laches to prevent "the prosecution of this stale demand." If the policy was in force and the company was guilty

of such fraud as to toll the statute of limitations, the doctrine of laches has no place in this action to recover on the policy. Kicklighter v. New York Life Ins. Co., 5 Cir., 145 F.2d 548.

Verdict should not have been directed either for the plaintiff or the defendant. In directing a verdict for the defendant insurance company, the trial judge invaded the province of the jury which is, and should be, the trier of facts.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SIBLEY, Circuit Judge (concurring).

It is true that the fraud which deters or prevents one from asserting his cause of action so as to toll the statute of limitations is actual moral fraud. To prove it against this Company some agent who acted for it must have been guilty of such fraud. But it can be inferred from circumstances, even slight circumstances. Georgia Code Sect. 37-706 reads: "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Mrs. McLean did not, according to her, know the policy was in force, since the premium note was not paid. But the agents of the Company, on learning that the policy had been delivered with a recital that the premium had been paid, and that another agent had taken and discounted a note for part of the premium, might be found to know that the premium had been paid though not turned in to the home office, and that the policy was in force; and Mrs. McLean's offer to exchange a $5,000 asset for a $200 liability showed ignorance on her part which was purposely taken advantage of. The policy was taken out of the State, and no disclosure of its existence ever made to anyone who really represented the estate to which it was payable. If its being gotten from her, and its existence thereafter concealed from those interested in its collection, with the intention of depriving the estate of both the knowledge and the evidence of this asset, Mrs. McLean alone knowing of it and she believing

it not of force, I think a moral fraud which deterred and prevented the administrator of the estate from suing would exist. There are many circumstances pointing to good faith, and the great lapse of time and death of witnesses ought to put a check on too hasty inferences. But I think a jury question exists on this point.

HUTCHESON, Circuit Judge (dissenting).

When the case was here before it was on an appeal from a dismissal of the complaint. This time it is from the direction of a verdict after the evidence was in.

While the evidence is far from convincing on the point, I agree with the view of the majority that it presented an issue of fact upon whether the premium was paid and the policy delivered. I think it quite plain though that it presented no issue of fact as to the bar of the statute of limitations, and that the judgment should be affirmed.

It is undisputed that far more than the statutory time for barring an action on the policy has long since run, and that a judgment for defendant was demanded unless the evidence made an issue as to whether "the defendant * * * [was] guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action". Code, Sec. 3-807.

Under Georgia Code, Sec. 37-706 and Georgia decisions construing it, Adams v. Higginbotham, 194 Ga. 292, 21 S.E.2d 616, "Fraud may not be presumed and while it may be proved by circumstances, it must nevertheless be proved". Further, Georgia decisions have settled it that "[the] fraud by which the plaintiff shall have been debarred or deterred from his action" is to be differentiated from ordinary fraud from which a cause of action springs. Middleton v. Pruden, 57 Ga.App. 555, 557, 196 S.E. 259, 261, thus states the Georgia law:

"In determining whether fraud by which the plaintiff had been 'debarred or deterred' from his action mentioned existed, we should in order to differentiate it (in a sense, insulate it), from the question of the allegations of fraud from which the cause of action sprang. And then we

should look only to the facts (in their relation to the tolling of the statute of limitations), to see whether or not that kind of fraud mentioned in said section has been alleged, and it should be borne in mind that constructive fraud as well as actual fraud might give rise to a cause of action, *whereas the only kind of fraud which would toll the statute of limitations is actual fraud. If this were not true, there would be no statute of limitations against fraud which gave rise to a cause of action unless and until it was discovered, even though it were obvious that the fraud could and should have been discovered by the exercise of ordinary care.* In considering the issue whether or not the statute of limitations is tolled until the discovery of the fraud, the special difficulty may to some degree disappear if we bear in mind that the fraud which gave rise to the cause of action may be considered only as a circumstance incidental to the proof of guilt of a fraud by which the plaintiff has been 'debarred and deterred' from bringing his suit. In this state the courts have held that the fraud referred to in the Code, § 3-807, which tolls the operation of the statute of limitations, is not necessarily the same fraud which gives rise to the cause of action. *The fraud referred to in this section must be actual fraud involving moral turpitude.* Barrett v. Jackson, 44 Ga.App. 611, 162 S.E. 308." (Emphasis supplied.)

When the record is looked to for evidence of such fraud, it is looked to in vain. The pleading admits that Mrs. McLean, widow of deceased, "knew the facts herein set out" and her testimony contains not a single sentence from which it could be inferred that any person representing or connected with the defendant was guilty of any actual fraud involving moral turpitude by which plaintiff was debarred or deterred from his action. Taken at its best for plaintiff, all that her testimony shows is that she surrendered the policy and got back the note because her husband had intended to do it in his life time and she felt she was carrying out his wishes in doing so. There is no evidence that any one in the company made any statement of fact to her to induce her to surrender it, or after it was surrendered made any false statements to deter bar or deter her as administrator from her action. The evidence standing thus, I think it quite plain that the suit brought more than thirty years after the cause of action, if any, accrued, was absolutely barred. On this record it will not do to come into court admitting that Mrs. McLean's cause of action is barred because of her knowledge, but the cause of action of the others interested in the estate is not. This is so because there are no facts shown of actual fraud on the part of the defendant by which the plaintiff shall have been debarred or deterred from his action.