## 54477. UNION CIRCULATION COMPANY, INC. v. TRUST COMPANY BANK et al.

QUILLIAN, Presiding Judge.

This is an appeal by the plaintiff from the grant of a partial summary judgment for defendant. Plaintiff's executive vice-president, David Crawford, diverted incoming checks made out to Union Circulation Company, Inc., to his wife. Mrs. Crawford opened up an account in the Trust Company Bank of DeKalb in the name of Union Circulation Company. Indorsements were made by using the Union Circulation Company, Inc. rubber stamp — after the "Inc." had been removed from the stamp. Thereafter, Mrs. Crawford withdrew those funds. Mr. Crawford continued his embezzling from December, 1970 to April, 1975. Mr. and Mrs. Crawford have consented to judgment against them for $100,000, but that judgment remains unsatisfied.

Plaintiff brought this action against Trust Company Bank, the successor bank to the Trust Company Bank of DeKalb. Plaintiff charged that defendant was guilty of negligence, failed to follow reasonable commercial standards, and was liable in conversion to plaintiff. Defendant bank moved for partial summary judgment on the basis that all claims asserted by plaintiff prior to four years before the filing of the present action was barred by the statute of limitation, Code § 3-1003. This motion was denied on April 29, 1977. In the next term of court, May 2, 1977, defendant moved "for reconsideration and re-hearing on its motion for partial summary judgment." Defendant did not change the basis for the motion but did add legal reasons why they contended the statute of limitation had run. Plaintiff argued that the court could not entertain such motion as it was not filed within the term in which the order was entered, and the motion to reconsider was nothing more than a second motion for summary judgment. The court granted the motion and vacated the prior order. Plaintiff appeals. *Held:*

1. Both sides have presented cogent and persuasive law and reasoning why each should prevail but neither has presented a Georgia case on point. We are familiar with the general law concerning the authority of the trial

court to revise, amend or revoke orders and judgments. But, because there may be some confusion as to inexact terminology in some opinions, we would like to reexamine the basis for the general rule that we follow: "A trial judge has the power during the same term of court at which a judgment is rendered to revise, correct, revoke, modify, or vacate such judgment, even upon his own motion, for the purpose of promoting justice and in the exercise of a sound legal discretion." *Tyler v. Eubanks,* 207 Ga. 46 (1) (60 SE2d 130). This "rule was never intended to authorize the judge to set aside a judgment duly and regularly entered unless some meritorious reason is given therefor." *Hicks v. Hicks,* 226 Ga. 798, 799 (177 SE2d 690). "This inherent power of the court extends to all orders and judgments save those which are founded upon verdicts." *East Side Lumber &c. Co. v. Barfield,* 193 Ga. 273, 277 (18 SE2d 492). "It is not too late for the judge to exercise this power if the proceeding for that purpose was begun during the term." *Pekor v. Clark,* 236 Ga. 457 (1) (224 SE2d 30).

At common law a court had complete control over its orders and judgments *during the term at which they were made* and could, on sufficient cause being shown, amend, correct, or vacate such judgments. See 49 CJS 436, Judgments, § 229. Generally, *in the absence of statutory authority,* we adhere to the common law and find that a court has no inherent authority to correct, amend, open or vacate a judgment *after expiration of the term.* See 46 AmJur2d 848, Judgments, § 699; 49 CJS 438, Judgments, § 230.

Black, in his Law of Judgments, explains the reason for the rules just stated. "During the whole of the term in which any judicial act was done the proceedings were considered to continue *in fiere,* and even after a judgment was rendered, the record was said to remain 'in the breast of the judges of the court and in their remembrance,' and therefore the judgment was subject to such amendment or alteration as they might direct. But after the term had passed, the record no longer remained in this nebulous condition. It was then spread at large on the judgment-roll, and thereupon acquired an inalterable and indisputable character, passed beyond the control of the court, and admitted of no alteration, modification, or

contradiction. (Id. p. 218). . . Thus, where a court makes an erroneous order under a mistaken view of the law, it may, during the term, of its own motion, correct the mistake by expunging such order and entering an order in accordance with the law of the case. [Id. p. 220]. . . But after the expiration of the term, unless the cause is still depending and the parties are in court, their power over the record is confined to errors and mistakes of their officers. . . [Id. p. 221]. . . [A]fter the term, the power of the court to amend its own record is limited to such corrections or changes as are in affirmance of the judgment originally rendered; it has no authority to strike out the judgment, to enlarge or diminish it, to change its whole nature, or to render another and different judgment upon the same record." (Id. p. 222). Accord, 1 Freeman on Judgments (5th Ed.) 267, 269, §§ 140, 141; 49 CJS 436, 438, Judgments, §§ 229, 230; 46 AmJur2d 848, Judgments, § 699.

"The rule limiting the power of courts over their judgments to the term at which they were rendered applies only to final judgments. An interlocutory decree does not pass out of control of the court with the end of the term. Until the pronouncement of the judge has assumed the form of a final judgment by being entered or otherwise properly made a matter of record, it is subject to modification, change or amendment even after the term in which it was made." 1 Freeman on Judgments (5th Ed.) 279, § 143. Black states it slightly differently, but with the same meaning: "[T]he rule that the court has no power over its judgments after the expiration of the term, applies only to final judgments, not to judgments which are still in fieri. . ." 1 Black on Judgments (2d Ed.) 220, 223, § 154. Black's Law Dictionary defines "in fieri" as: "Legal proceedings are described as *in fieri* until judgment is entered."

Accordingly we find that the rule against amending or revoking a judgment after the expiration of the term in which it was entered has no application to interlocutory rulings so long as the case continues — from term to term, until final judgment. Until rendition of a final judgment, an interlocutory order remains within the control of the court. 49 CJS 438, 443, Judgments, § 230; 46 AmJur2d 851, Judgments, § 700; 1 Black on Judgments (2d Ed.)

221-223, §§ 154-155; 1 Freeman on Judgments (5th Ed.) 279, § 143.

As the ruling in the instant case was an interlocutory one, the term of the court ending had no effect upon the authority of the trial court to reconsider his ruling. We note that Code Ann. § 81A-106 (c) (CPA § 6 (c); Ga. L. 1966, pp. 609, 617; 1967, pp. 226, 229, 230) states: "The continued existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which had been pending before it." Our holding in this case explains the background for this statute and is in consonance with it. See *Van Keuren v. Loomis,* 128 Ga. App. 136, 137 (195 SE2d 776). The trial court did not err in reconsidering his earlier interlocutory ruling, even though the term had passed, so long as the case remained pending before him and final judgment had not been entered. This enumeration is without merit.

2. Plaintiff brought this action on April 30, 1976. The court judgment barred claims arising "prior to April 30, 1972." Code § 3-1003 provides that all suits for recovery of personal property, "or for damages for the conversion . . . of the same, shall be brought within four years after the right of action accrues and not after." The court applied this section and dismissed more than one-half of plaintiff's cause of action. Plaintiff argues that Code § 3-807 applies. That section states: "If the defendant, or those under whom he claims, shall have been guilty of a fraud by which the plaintiff shall have been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud."

The fraud cited in this statute "which is necessary to toll the statute of limitations until the discovery of the fraud which gives rise to the cause of action, must be actual fraud, involving moral turpitude, which 'debars and deters' the plaintiff from his action . . . yet the establishment of the fraud that gives rise to the cause of action does not necessarily establish the fraud that 'debars or deters' the plaintiff from his action mentioned in the Code. . . " *Middleton v. Pruden,* 57 Ga. App. 555 (1) (196 SE 259). In determining whether such alleged fraud

is of the type that "debarred or deterred" plaintiff from his action "we should look only to the facts . . . and it should be borne in mind that constructive fraud as well as actual fraud might give rise to a cause of action, whereas the only kind of fraud which would toll the statute of limitations is actual fraud." Id. p. 557.

Generally, it has been held that the statute of limitations runs from the discovery of the fraud when fraudulent conversion of money or other property has been concealed by a guilty party who occupies a fiduciary relation toward the person defrauded. See generally 54 CJS 185, 219, Limitations of Actions, §§ 188b (2), 206 (a); 51 AmJur2d 717, Limitations of Actions, § 147; Rosenthal v. Walker, 111 U. S. 185 (4 SC 382, 28 LE 395). This court has held that "[i]n the absence of any confidential relation, fraud, which tolls the statute of limitations, must be such fraud as could not have been discovered by the exercise of ordinary care. 'Ignorance of fraud which, by use of ordinary diligence, might have been discovered in due time, will not hinder the statute of limitations from running.'" *Middleton v. Pruden,* 57 Ga. App. 555, 559 (2), supra. We must determine whether a fiduciary relationship existed as between the bank and the plaintiff, or as between a person under whom the bank claims — and the plaintiff.

As noted earlier, David Crawford, the executive vice-president of the plaintiff corporation, was the embezzler of plaintiff's checks and collected them through the agency of the defendant bank. The relationship of a corporate officer to the corporation and its stockholders is fiduciary or quasi-fiduciary, which requires that he act in utmost good faith and in many instances can be considered a trustee for the corporation and its stockholders. See generally 19 AmJur2d 679, Corporations, § 1272; 19 CJS 103, 107, Corporations, § 761 (b). "Directors and officers in the management and use of corporate property in which they act as fiduciaries and are trustees [,] are charged with serving the interest of the corporation as well as those of all the stockholders." *King Mfg. Co. v. Clay,* 216 Ga. 581, 585 (118 SE2d 581); see also *Atlanta Real Estate Co. v. Atlanta Nat. Bank,* 75 Ga. 40 (1); *Fricker v. Americus Mfg. &c. Co.,* 124 Ga. 165,

175 (11) (52 SE 65).

The general rule may be stated as: " 'Where the basis of an action is actual fraud, the mere silence of the party committing it is treated as a continuation of the original fraud and as constituting a fraudulent concealment, and the statute of limitations does not begin to run against such right of action until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence '. . . Concealment per se amounts to actual fraud, where, from any reason, one party has a right to expect full communication of the facts from another.' " *U. S. Fidelity &c. Co. v. Toombs County,* 187 Ga. 544, 554 (1 SE2d 411). "But the fiduciary relation fully warrants exactly the opposite course. Here, at least, the beneficiary may be off guard, and may rely implicitly, not only on what is said, but also on the supposition that nothing important will be left unsaid by the officer." *Oliver v. Oliver,* 118 Ga. 362, 371 (45 SE 232). "As a general rule, equity will grant no relief to one against whom an unfavorable judgment has been rendered, even in consequence of fraud, where the aggrieved party could have prevented the return of such a judgment by the exercise of proper diligence; but this rule is not applicable where there is a confidential or fiduciary relation between the parties. In such a case the law requires the utmost good faith, and the parties are not required to anticipate or watch for fraud." *Hogg v. Hogg,* 206 Ga. 691 (3) (58 SE2d 403); *Lewis v. Lewis,* 228 Ga. 703 (3) (187 SE2d 872).

We find that Crawford held a fiduciary relationship with the plaintiff and breached such relationship by the diversion of the plaintiff's checks and concealment of such embezzlement. See *Quinn v. Forsyth,* 116 Ga. App. 611, 617 (158 SE2d 686); *Boddy v. Theiling,* 129 Ga. App. 273, 276 (199 SE2d 379); Nadler, Ga. Corporation Law 353, § 370 (3).

Crawford's deposit of the forged checks belonging to plaintiff in defendant's bank gave rise "to the presumption, as between the parties, that the bank is the collecting agency of the depositor." *Pazol v. Citizens Nat. Bank,* 110 Ga. App. 319, 320 (138 SE2d 442). The bank became a holder by taking through the forged indorsement of Crawford. Id. p. 321. "Where the name of

the indorsee is forged, a bank which collects the check bearing such forgery and credits the proceeds to the account of the forger commits conversion and is liable to the person who was the lawful holder prior to the forged indorsement." 2 Anderson, Uniform Commercial Code 1037, § 3-419:11.

In a similar case in Texas, a state which has also adopted the Uniform Commercial Code, the court held that "a collecting bank which takes an instrument containing a forged indorsement fails to take good title..." (Tubin v. Rabin, 382 FSupp. 193 (ND Tex 1974)), "and holds the proceeds thereof, when collected from the drawee bank, for the rightful owner, who may recover from the collecting bank as for money had and received, even though such bank has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery." Fidelity & Deposit Co. of Maryland v. Fort Worth Nat. Bank, 65 SW2d 276 [2, 3].

This court, in *Frye v. Commonwealth Invest. Co.,* 107 Ga. App. 739 (1) (131 SE2d 569), held that where a plaintiff's stock certificates were forged and transferred to the defendant by a licensed broker with whom he had an account and had left the stock certificates, and such broker concealed such fraud until the statute of limitation had run, "the defendant in a trover action holds under one who is guilty of actual moral fraud by which the plaintiff has been debarred or deterred from bringing his action, the running of the statute of limitation is suspended until the discovery of the fraud." In affirming, the Supreme Court said that the plaintiff "was debarred or deterred from bringing this action until the discovery of the actual fraud, thus tolling the statute of limitation under Code § 3-807, and since the defendant claims under the alleged forger . . . the Court of Appeals did not err. . ." *Commonwealth Invest. Co. v. Frye,* 219 Ga. 498 (134 SE2d 39).

The instant case is sufficiently similar to *Frye* to require us to find that *Frye* controls the results we reach. In each case an individual who had a fiduciary relationship to the owner of personalty, forged and transferred the personalty to the defendant. The defrauded plaintiff did not discover the fraud until the

statute of limitation had run. We find that Code § 3-807 tolls the statute of limitation until fraud is discovered where a fiduciary relationship exists between the party defrauded and the party under whom the defendant claims. *Middleton v. Pruden,* 57 Ga. App. 555, supra.

If there are facts involving whether the fraud was committed, or excuses for delay in discovering the fraud, these questions are those of "mixed law and fact" and should be determined by the jury. *Morris v. Johnstone,* 172 Ga. 598, 605 (2) (158 SE 308).

*Judgment reversed. Shulman and Banke, JJ., concur.*

ARGUED SEPTEMBER 15, 1977 — DECIDED OCTOBER 3, 1977 — REHEARING DENIED NOVEMBER 3, 1977 —

*Strother, Weiner & Dwyer, Beryl H. Weiner, John C. Yancey,* for appellant.

*King & Spalding, George S. Branch, A. Felton Jenkins, Jr., J. L. Eisenberg,* for appellees.